## EDWARD TEBBETTS *vs.* ROBERT R. HASKINS *& al.*

In an action for the materials found in building a house, and the labor done in erecting it, the testimony of master builders, who had examined the house and made an estimate of the expense of erecting it, is admissible, to ascertain the amount of damages.

Where a contract in writing had been made between two persons, wherein one agreed to build a house and the other to pay a certain sum therefor, and which had afterwards been abandoned by them, and a house had been built by one party to the written contract for the other party and two others; *it was held,* that it was not necessary to prove an express contract, but that one might be implied ; and that the price for building the house was not to be ascertained from that fixed in the written contract.

EXCEPTIONS from the Court of Common Pleas, PERHAM J. presiding.

The action was for labor done in building a house, and materials furnished therefor. There were three defendants, *R. R.* and *Romulus Haskins,* and *Jotham Parsons.* The declaration originally was on an account annexed to the writ, and after the trial had commenced, the plaintiff, by leave of Court, the defendants objecting thereto, amended his writ by adding a *quantum meruit* for the same items. The defence set up was, that the work was done by the plaintiff for *Parsons* alone, under a written agreement, and that the *Haskins* were not interested in it. The plaintiff, with a great variety of other evidence on the trial, introduced the testimony of certain master builders, who had examined the house and made an estimate of the expense of erecting such a house as that

was. To this evidence the defendants objected, but the Court admitted it. It was shown on the trial, that the defendants were partners in trade, and that *Parsons* occupied one part of the house and the *Haskins* the other. Evidence tending to show the abandonment of the written contract by the parties; that the materials were to be charged, and the work to be charged by the day; and that the *Haskins* were jointly interested in the house, and contracted with the plaintiff jointly with *Parsons;* and also evidence to the contrary, was introduced, and all submitted to the jury.

The counsel for the defendants requested the Judge to instruct the jury, that if the contract between *Tebbetts* and *Parsons* was thrown aside, the *Haskins* are not liable, unless after such dissolution of the contract they expressly agreed and contracted to do it by the day; that no implied contract could arise in this case as to the *Haskins ;* and that the measure of damage is the contract price of the building with the real value of the alterations. The Judge instructed the jury, that if the *Messrs. Haskins* were not interested jointly with *Parsons* in the building of the house, they would not be liable unless they expressly made themselves so; but if they were jointly interested in the house with *Parsons,* and had the benefit of it, they would be jointly liable, unless the work was done under special contract; that if the contract was abandoned by the parties, it would furnish no regulation for the price of the work done subsequently; that if they found for the plaintiff, the amount of damages must be settled by the evidence, of which the jury were the judges; and that if they should find that the contract between *Tebbetts* and *Parsons* had been abandoned by them, and that the two *Haskins* were interested in the building, they would find for the plaintiff, but if both or either of the *Haskins* were not so interested, then they would find for the defendants, as the action could not be sustained against the defendants, unless they were all jointly liable.

The verdict was for the plaintiff, and the defendants filed exceptions.

*J. Appleton,* for the defendants, argued in support of the several grounds taken at the trial, and contended, that the instructions given did not cover the requests, and were erroneous. To show that the testimony of the master builders was improperly admitted, he cited

Tebbetts *v.* Haskins.

7 *Verm. Rep.* 158; 6 *N. H. Rep.* 462; 16 *Wend.* 587 ; 1 *Stark. Ev.* 389. That the plaintiff cannot say now, that this part of his evidence is wholly immaterial, and so may be rejected. 16 *Pick.* 567 ; 14 *Pick.* 520; 2 *Hall,* 40. That the contract price was the true measure of damage, making a proportionable allowance, where the contract had been departed from. 16 *Wend.* 589; 13 *Wend.* 276 ; 3 *Stark. Ev.* 1761.

*A. G. Jewett,* for the plaintiff, said, that the jury have found that the contract had been given up by consent of parties, and in this case, is to be considered as if it had never been made. The evidence of the value of the work from those who had seen it, and were most competent to judge of its value, is not only proper evidence, but the best the nature of the case admits. The work was done for all the defendants, and they must pay for it.

The opinion of the Court was drawn up by

EMERY J. — The first inquiry is, whether among a variety of other evidence introduced, evidence of certain master builders, who had examined the house, and made an estimate of the expenses as to the probable expense of erecting the house, as erected by the plaintiff, was legally admissible. The action is assumpsit on account annexed for work and labor done, and materials furnished, and a *quantum meruit.*

The usual way in which proof is made upon accounts for moneys paid to the amount of six dollars and sixty-six cents, for services rendered, goods, wares, merchandize sold, or materials supplied, is by producing the original entries of the charges made, accompanied by the supplementary oath of the party making them, to such articles as are not of such bulk and value as to require other proof. If the entries were made by a clerk, and he be living, and within the process of the Court, his testimony is to be exhibited. *Dunn* v. *Whitney,* 1 *Fairf.* 9. But this is not the only means by which a demand of this character may be established. Receipts, signed by the party to be charged, may be introduced. However prudent and judicious it may be to keep day books, in which transactions of sale may be entered, no man is compelled to keep accounts in writing. With many, who are ignorant, it may be impracticable. If inability do not exist to keep the requisite memo-

randa, and yet such accounts are not shown, still the best evidence in his power to give, may be introduced. It would be under many disadvantages, if it were shewn that regular accounts of the work had in truth been kept, but were not exhibited. The fact that a building was erected by the plaintiff for the defendants, was susceptible of proof by witnesses. The just expense might not be easily demonstrated. The objection is in fact to the measure of proof. We have not here, as in *Maryland,* a statute in relation to the probate of accounts, that the party bringing suit shall make oath before some Judge or Justice of that State, or before some Court, Judge, Justice or officer of the State or county, where such money, goods, &c. shall have been delivered, that he believes the money, goods, &c. charged in the account, to which such oath, &c. shall be annexed, were, *bona fide,* delivered as charged, and that he hath not to his knowledge or belief received any payment, or satisfaction for the articles charged, more than credit is duly given for in, and appearing on the account, to which such oath, &c. shall be annexed, nor hath he received any security for the same ; and that the balance charged and claimed is justly due, according to the best of his knowledge and belief. *Dyson* v. *West's Ex'r*, 1 *Har. & Johns. Maryland Rep.* 567.

Our statute for the relief of poor debtors, when one is to be arrested on *mesne process,* who is about to depart and establish his residence beyond the limits of the State, with property or means exceeding the amount required for his own immediate support, requires the oath or affirmation of the creditor, his agent or attorney, before a justice of the peace, of reasons to believe and actual belief of the fact, and that the demand in the writ is, or the principal part thereof due him. This measure does not avail to establish the justice of the claim on trial, but is only a security against the abuse of the process of the Court for the purpose of arrest. Whether further legislation be desirable must be left with the appropriate power to decide. In this case, no illegal course was adopted before the jury in attempting to prove the plaintiff's claim in the absence of the book account. It is objected, that it was totally improper to receive evidence of the probable expense of building the house, of opinions which were merely rough guesses, miserable hearsay.

Though witnesses can, in general, speak only as to facts, yet in compilations of the law of evidence, there is a regular citation of certain cases on the subject of the opinion of witnesses. In 1 *Phil.* 226, 227, that in questions of science or trade, or others of the same kind, persons of skill may speak not only as to the facts, but are allowed also to give their opinions in evidence. Evidence of character is founded on opinion. Opinions of a medical man as to the state of his patient is evidence; so of ship builders as to seaworthiness of a ship, from examining a survey taken by others, at which the witness was not present; so of an engineer from his own experiments in a particular harbor, that the removal of a certain bank in another similarly situated on the same coast, would not restore the harbor, and as to forged seals, engravers are admitted to show difference between genuine impression, and one supposed to be false; so as to handwriting, and of an artist in painting as to genuineness of a picture. 3 *Stark. Ev.* 1736; *Norris' Peake's Ev.* 278, 279.

It was decided in *Hathorn & al.* v. *King, Ex'r*, 8 *Mass. R.* 371, on *Mrs. Norris'* will, that physicians may be inquired of whether from the circumstances of the patient, and the symptoms they observed, they are capable of forming an opinion of the soundness of her mind, and if so, whether they from thence conclude that her mind was sound or unsound, and in either case, they must state the circumstances or symptoms, from which they draw their conclusions. So the subscribing witnesses to a will are permitted to testify their opinions respecting the sanity of the testator. *Ware* v. *Ware*, 7 *Greenl.* 42.

In *Dickenson* v. *Barber*, 9 *Mass. R.* 225, it was held, that although the opinions of professional gentlemen on facts submitted to them, have justly great weight attached to them; yet they are not to be received as evidence, unless predicated upon facts, testified either by them or by others.

In *Davis* v. *Mason*, 4 *Pick.* 156, a practical surveyor with long experience, was permitted to be asked his opinion, whether certain heaps of stones put up, and certain trees were anciently marked, for the purpose of making them monuments of boundaries, because he would have acquired a skill in determining, whether they were so intended.

In 1825, on an information against one for a violation of a statute concerning the students of *Yale College*, for giving credit to one *Van Zandt*, a student and minor, witnesses were permitted to state, being well acquainted with *Van Zandt*, that they should think, from his appearance, that he was a minor between the age of fourteen and the age of seventeen years. On error brought, the testimony was held to be inadmissible. It was opinion entirely abstracted from fact. Had the witness testified to the facts, indicative of *Van Zandt's* age, and accompanied them with their belief or opinion, the Chief Justice said he should consider the testimony competent. *Morse* v. *State of Connecticut*, 1 *Conn. Rep.* (2d *Series*,) 9.

In a suit for breach of promise of marriage, a witness was permitted to be asked, whether, living with the plaintiff, and from an observance of her deportment, he was of opinion, that the plaintiff was sincerely attached to the defendant, because there are a thousand nameless things, indicating the existence and degree of the tender passion, which language cannot specify. The opinion of witnesses on this subject, must be derived from a series of instances, passing under their observation, which yet they could never detail to a jury. *McKee* v. *Nelson*, 4 *Cowen*, 355.

Whether particular facts, if disclosed to an underwriter, would in the opinion of a witness, conversant with the subject of insurance, as a matter of judgment, make a difference as to the amount of premium, was held to be admissible evidence. 2 *Stark. Rep.* 229.

In a question of settlement of a pauper, between the towns of *Rochester* and *Chester*, in 3 *New-Hamp. Rep.* 349, where a witness was called to testify to the value of a small lot of land, and a hut upon it, it was held, that the opinion of witnesses as to the value of property owned by the pauper was not admissible, although they were well acquainted with it, and had examined for the purpose of ascertaining its value, and with a view to purchase; on the ground, that the jury must be supposed competent to ascertain this without the aid of such assistance. The like decision was made upon a similar question, between the town of *Peterborough* and the town of *Jaffrey*, 6 *New-Hamp. Rep.* 462. Against this it is laid down by the late *Judge Swift*, in his digest of the *Law of Evidence*, 111, that "in questions with respect to the value of any

article of property, the witness must often testify an opinion or judgment."

In particular branches of trade or manufacture, we hold that the opinions of persons skilled in these respective matters should be received, as well as to the value, as the fidelity and excellence of the work. They are all open to cross examination, and the reasons of their opinion may be required. If opposing testimony be introduced, it is the office of the jury at last to judge which of them is entitled to most weight. We consider that there was no error in the Judge in admitting the testimony of the master builders as to their opinion and estimate of the probable expense of erecting the house as erected by the plaintiff. For it all resulted in helping the jury to determine how much he deserved to receive. And the amendment offered, after the trial had progressed, was within the discretion of the Court to permit.

The instructions given by the Judge, were, that if the *Messrs. Haskins* were not interested jointly with *Parsons* in the building of the house, they would not be liable, unless they expressly made themselves so, but if they were jointly interested in the house with *Parsons*, and had the benefit of it, they would be jointly liable, unless the work was done under a special contract. They were likewise directed, that if the contract was abandoned by the parties, it would furnish no regulation for the price of the work done subsequently. That if they found for the plaintiff, the amount of damages must be settled by the evidence, of which the jury were the judges. And that if they should find that the contract between *Tebbetts* and *Parsons*, had been abandoned by them, and that the two *Haskins* were interested in the building they would find for the plaintiff; but if both or either of the *Haskins* were not so interested, then they would find for the defendants, as the action could not be sustained, against the defendants, unless they were all jointly liable. This course of instruction we think altogether superseded the necessity of complying with the requested instructions sought for by the defendants. It was as favorable to the defendants as by law it ought to be.

*Gibbs C. J.* in *Robson* v. *Godfrey & al.* 1 *Stark. Rep.* 220, says, " I have always understood the rule to be, that you may recover for work executed as for work and labor generally, if the

terms contained in the written agreement are not of such a nature as to preclude a recovery otherwise than on the contract itself. It is every days experience that a party may recover on the general counts for work done under a special contract."

In the present case, it appears that the contract was abandoned. It is therefore to have no effect whatever in the estimate of the jury, for there is no pretence that any terms, contained in it, were to be binding on the parties. It must be considered as abandoned entirely. *Chitty on Contracts*, 169; *Keyes* v. *Stone*, 5 *Mass. R.* 391; *Tuttle* v. *Mayo*, 7 *Johns. R.* 132; *Lenningdale* v. *Livingston*, 10 *Johns. R.* 36.

It would seem that the defendant might give the special agreement in evidence, with a view to lessen the damages, and for that purpose it was used. The whole evidence was submitted to the jury, and by them determined.

The exceptions are therefore overruled, and there must be judgment on the verdict.