## JAMES v. STIGGINS.

1. S being entitled to a reservation by the treaty of Fort Jackson, leased the land to J, and received from J certain slaves, the labor of which he was to take as rent for the land during his life.   It was further stipulated, that if the children of S, on coming of age, should convey to J their title to the lands, they should be entitled to the slaves.   Held, that as this contract, so far as it relates to the heirs of S, was not binding on S, it was not for that reason binding on J, and that on the death of S, J could bring his action to recover the slaves, without yielding up to them the possession of the land, if he still retained it.

Writ of Error to the Circuit Court of Macon.   Before the Hon. G. W. Stone.

THIS was an action of detinue at the suit of the plaintiff in error, for the recovery of certain slaves. The cause was put to the jury on the general issue. From a bill of exceptions sealed at the instance of the plaintiff, it appears that an agreement was made and entered into between the plaintiff and George Stiggins, which recites that the latter was entitled by patent from the general government, under the treaty of Fort Jackson, to a tract of land situate in Clarke county, and known as fractional section one, in township four and range three, east, lying on the west side of the Alabama river, containing 170 60-100 acres. It is further recited, that Stiggins being prevented by the treaty referred to, from conveying a fee simple title to the plaintiff, doth lease to the plaintiff the land above described, during the life of the lessor, without the molestation of him, his heirs, executors, &c., or any one claiming under him or them. In consideration of such lease, the plaintiff agrees that he will place in the possession of Stiggins the following slaves, Arena, Maria, Cyrus, and others who are specially named—all of whom are the property of the plaintiff. It is also stipulated, that the services of these slaves shall go to the use and benefit of the lessor, as an equivalent for the lease, from year to year during his life. The parties to the instrument further agree, that whenever the children of Stiggins, on attaining the age of twenty-five years, convey in fee simple their interest in the land respectively, to the plaintiff, his heirs and assigns, then the plaintiff, his heirs, &c., will relinquish a proportionable share of interest in the slaves particularized in the agreement, and their future increase, to each of the heirs who shall relinquish his right above provided. This agreement was signed and sealed by the parties, in presence of witnesses, and recorded in the offices of the clerks of the county courts of Macon and Clarke counties.

The plaintiff also proved the identity of the slaves sued for, with those described in the above writing—the value and hire of each—the death of George Stiggins previous to the institution of this suit, and the possession of the slaves by the defendants when the action was commenced. One of

the defendants is the widow, and the other a son of George Stiggins.

On these facts the jury was charged, "that the plaintiff was not entitled to recover without tendering back 'the land." Thereupon the plaintiff excepted, and submitted to a non-suit.

N. W. COCKE, for plaintiff in error.

1. The agreement between plaintiff and Geo. Stiggins, embraces two separate and distinct stipulations : The first is, the agreement of Stiggins to lease the land to plaintiff for and during his (S's) natural life, in consideration that plaintiff, as a full equivalent therefor, from year to year, had placed in his possession the slaves named in the instrument, for the term specified. This portion of the agreement was fully executed at the death of Stiggins.

2. The second stipulation is, the agreement of plaintiff, that if the children of Stiggins, when they respectively arrive at the age of twenty-five years, will convey to him in fee simple their interest in the land, he will then relinquish to each of them a proportionable share of the slaves and their increase. This was executory.

3. The second stipulation appears on the face of the instrument to be wholly without consideration, and without mutuality, and is therefore void.

4. If this be not so, the agreement leaves the legal title in the plaintiff, and vests in the children a mere contingent equity, which the defendants cannot set up against the legal title in a court of law, unless the agreement has superadded to that equity, the right of possession immediately upon the death of Stiggins.

5. There is no such stipulation in the instrument, and a court of law, whatever may be its speculations as to the intent of the parties, cannot add that which they did not include. Story on Cont. § 235; Paysant v. Ware, 1 Ala. 165; Parkhurst v. Smith, Willes' Rep. 332.

6. If the children have not reached the age of twenty-five years, the time has not arrived when they can assert any right under the provision in their favor. If they have reached that age, even a court of equity would not interpose in

their behalf to prevent the plaintiff from recovering the possession of the slaves, unless they should shew affirmatively their ability to make a fee simple title, and an offer to do so. Peformance on their part is a precedent condition.

7. If the agreement can be construed so as to make it a sale, it is then a sale of a life estate to Geo. Stiggins, with remainder to his children, contingent on their arrival at the age of twenty-five years, and their affirmance of the contract, and the remainder is void—at all events, unless the defendants can show that the contingency on which the remainder vested, happened before, or at the death of Geo. Stiggins.— Price v. Price, 5 Ala. Rep. 578 ; Co. Litt. 49, a, b, 378 a; Plowd. 25, 28; Fearne on Rem. 3; Prest. on Est. 71, 4; Archer's case, 1 Co. 65, 2 Co. 51; Chudleigh's case, 1 Co. 138; Plow. R. 25; Mayor, &c. v. Alfred, Cro. 576.

8. If the remainder is void, the slaves reverted to plaintiff on the death of Stiggins.   2 Cruise's Dig. 300, § 12.

JAS E. BELSER and G. GUNN, contra.

1. In the construction of contracts, the intention of the parties, (when that can be ascertained,) will govern.   In arriving at this, the situation of all the parties, and the subject matter will be looked to, and when that intention is arrived at, will control, although at the expense of some portions of the instrument.   Wilson v. Troup, 2 Cow. 195; Sumner v. Williams, 8 Mass. 214; Fowle v. Bigelow, 10 Ib. 377; Hopkins v. Young, 11 Ib. 302; 11 Pick. 154; Hollingsworth v. Fry, 4 Dall. 345.

The contract upon which plaintiff relies for a recovery may be stated thus :   Stiggins was in the possession of a valuable settlement of land, to which he could not convey a fee simple title—his children, at the age of twenty-five years could convey—James desires to acquire the same, and agreed with Stiggins for a lease of the land, providing for a conveyance by the children of Stiggins, when they should arrive at the proper age, and binding himself to relinquish a proportionate interest in the slaves, to such child or children as should relinquish their interest in the lands.   From which it is apparent that the intention of James was to acquire the

land, and that of Stiggins to acquire the slaves. Not that the contract should cease at the death of Stiggns, but that the same should continue, and that the children Stiggins, at or after their arrival at the agreed age, should have the slaves, upon relinquishing their interest in the land. Any other view of the contract would enable James to acquire the land without any equivalent. Besides, there is no power in the instrument for return of the slaves, or a possession of the land—such was not contemplated. The preamble will be looked to as a key to the other powers. This expresses an agreement on the part of Stiggins, his heirs, &c. of the one part, and James, and his heirs, &c. of the other part. Canal Co. v. Rail R. Co. 4 Gill & John. 4.

If this contract would admit of two constructions, one of which would make it operative, the other void, the former will be adopted. Archibald v. Thomas, 3 Cow. 284.

Although the instrument expresses that the services of the slaves shall be in full remuneration for the lease, from year to year, during the life of Stiggins, the other portions of the instrument, showing an intention to purchase, will control. Stouffer v. Coleman, 1 Yeates, 393; Neave v. Jenkins, 2 Ib. 107; Seaman v. Dill, 4 Ib. 295; Jackson v. Clarke, 3 John. 235.

The consideration of this instrument has been passed upon by this court, and affirmed to be good. James v. Scott, 9 Ala. 579; see also, Evans v. Boling, 5 Ib. 550; Overstreet v. Phillips, 1 Litt. 120.

This action is an effort on the part of James to rescind the contract in part, without showing any failure on the part of the children of Stiggins to comply—without delivering the possession of the land—without showing any eviction, or any disturbance of his possession—without offering to place the parties in *statu quo*—when it is apparent they could not be placed in *statu quo*—when there is no fraud, or allegation of fraud—which effort will not receive the sanction of any court. Clements v. Loggins, 1 Ala. R. 622; 9 Porter, 420; 2 Ala. 519; 4 Porter, 374; Cullum v. Br. Bank at Mobile, 4 Ala. R. 21; Cope v. Williams, Ib. 362; 3 Hayw. 109.

The agreement on the part of James, that upon the release of the children of Stiggins, to a proportionate share in the

land, at or after their arrival at the proper age, is a valid contract, and vested a right in the children of Stiggins, which he cannot take from them, the same being a conditional sale. 8 Yerg. 96 ; Palmer v. Scott, 1 Russ. & M. 391.

COLLIER, C. J.—In James v. Scott, 9 Ala. Rep. 579, we decided, that the first branch of the agreement by which the land was leased to the plaintiff, and the possession of the slaves yielded to the lessor as an equivalent for the rent, was a valid contract, and the plaintiff could not, while he occupied the land, recover the slaves of Stiggins, or one claiming under him during his life. We are now called on to determine whether the latter part of the agreement is obligatory on the plaintiff, so that he cannot, now that Stiggins is dead, maintain an action for the slaves.

The agreement is too explicit in its terms, to admit of serious controversy as to the meaning of the parties. It was obviously the intention of the plaintiff to enjoy the land during the life of the reservee, under the treaty recited, and after his death to acquire a fee simple title, if his heirs were willing to convey their interest upon attaining the age when, by the treaty and the law of Congress, they were competent to dispose of it. A conditional sale of the slaves cannot be predicated of any thing contained in the writing. They were merely placed in the possession of the reservee as a substitute for rent, with a stipulation, that if the plaintiff obtained a title under a purchase to be made of the reservee's heirs, the latter should become the proprietors of them. Whether the heirs would sell their respective portions of the land, was a matter depending upon their volition, to be exercised when the time appointed for their decision arrived.

It must be observed that the contract we are considering is altogether unilateral—it stipulates what the plaintiff shall do, but does not (in fact could not) undertake for the performance of any duty by the heirs of Stiggins—it provides what they shall receive as an equivalent for a contemplated act, but imposes no obligation to do the act. In this view, it is perfectly clear that the second branch of the agreement wants an essential element of a contract—reciprocity. Allen v. Roberts, 2 Bibb's Rep. 98 ; Cooke v. Oxley, 3 T. Rep. 653 ;

Humphries v. Carvalho, 16 East's Rep. 45; Lee v. Whit-comb, 5 Bingh. Rep. 34; Tucker v. Wood, 12 Johns. Rep. 190; Story on Con. 52, *et seq.* These citations abundantly establish that it is indispensable to the legal validity of a contract, that it should be mutually obligatory upon the parties, or it will be binding on neither of them.

The plaintiff, by bringing his action for the recovery of the slaves, has signified his purpose not to be bound by his undertaking to exchange them with the heirs of Stiggins for the land, conceding the agreement contemplates that after the death of the latter the slaves shall remain in the possession of the heirs until they are of sufficient age to assent or dissent to the sale of their respective interests. We have already intimated that the only term of the agreement that is obligatory, became *functus officio* upon the death of Stiggins, and whether any other duties and responsibilities as between the plaintiff and his heirs shall grow out of it, must depend upon a contract to be made *in futuro*. The writing, as it respects even the last branch of it, has no validity—it evidences a contract in *embryo*, ineffectual for all legal purposes, until life is imparted to it.

Under such circumstances, even if it can be presumed that the plaintiff still retains the possession of the land, was it indispensable to his right to recover that he should have offered to yield it to the heirs of his lessor? The contract being at an end by the operation of the law upon its terms, the effort to recover the slaves cannot with propriety be called a rescission of that part which never had validity. In no point of view can the agreement of the plaintiff to deliver up the slaves to Stiggins's heirs, if they would when competent, perfect his title to the land, be considered as more potent in law than a mere proposition to purchase from them when they became old enough to sell. Such a proposition might be withdrawn at the mere pleasure of the party making it, any time previous to its acceptance, so as to make a binding contract. Falls & Caldwell v. Gaither, 9 Port. Rep. 605. The defendants, then, as the legal distributees of George Stiggins, have no right to retain the slaves in question; nor can they insist upon being restored to the posses-

sion of land which the former leased to the plaintiff, as a condition precedent to his right to maintain the present action. The doctrine which requires a party to be placed in *statu quo* in order to rescind, does not apply where there is neither in law or fact, any thing having the form or the substance of a contract. It is not allowable for the defendants to set off the retention of the possession of the land against the enforcement of a clear legal right. If it be true that the plaintiff has continued to occupy the land since the death of George Stiggins, perhaps he would not be allowed to recover hire for the slaves, but the hires and rents would be set off against each other.

The judgment of the circuit court is consequently reversed, and the cause remanded.