# Evans *v.* Cincinnati, Selma & Mobile Railway Company.

*Action for Breach of Special Contract.*

1. *Consideration and mutuality of contract.*—Mutuality is an essential element of a contract, and neither party is bound unless both are; yet a promise is a sufficient consideration to support another promise; and when a unilateral promise is made, acceptance of performance, or any act done in recognition of its implied though unexpressed consideration, supplies the element of mutuality, and gives a right of action on the contract.

2. *Special contract construed, as to employment and compensation of agent by railroad company.*—A written instrument, signed only by a railroad company, by which, in consideration of a promise by the

[Evans v. Cincinnati, Selma & Mobile Railway Co.]

owner of lands to convey to it a right of way through his lands, the company binds itself (1st) to pay him a specified sum of money, (2d) to establish a station or depot at or near a named road-crossing; (3d) to fence the track through his lands, (4th) to locate the houses for the section hands at or near the station, and (5th) to appoint him agent for said station, to continue him as such so long as he faithfully discharged the duties of the agency, and to pay him a salary as agent of $30 per month, should the business of the station justify the same,—does not, of itself, constitute him an agent of the railroad company at said station, on the completion of the road, but gives him an absolute right to demand the appointment; nor does it fix his compensation as agent at $30 per month, but leaves it to be determined by the amount of business done at the station, as computed by the customary percentage on receipts; but the promise of the company to appoint him as its agent is supported by a sufficient consideration, although there is no promise on his part to accept the agency.

3. *Same; averment of complaint in action for breach.*—To maintain an action for the breach of such agreement, the plaintiff must aver that he made application for the agency; and to support a claim to compensation at $30 per month, he must aver that the business of the station justified the payment of that sum.

4. *Same; damages for breach.*—An action lies, also, for the breach of the agreement to locate the section houses and to fence the track, and at least nominal damages may be recovered, and any actual damages which are the natural and proximate consequences of the breach; but not merely possible or speculative losses, such as the possible increase of patronage to his store and mill by the location of the houses.

5. *Same; acceptance of performance after suit brought; how pleaded.* If a fence was built by the company after suit brought, and was accepted by plaintiff in full satisfaction of that breach, this is only available under a sworn plea *puis darrein continuance.*

APPEALS from the Circuit Court of Hale.

Tried before the Hon. JOHN MOORE.

This action was brought by Benjamin S. Evans against the appellee, a domestic corporation, to recover damages for alleged breaches of a written contract signed by the defendant, which was dated January 21st, 1882, and in these words: "Know all men by these presents, that the Cincinnati, Selma & Mobile Railway Company hereby agrees to the following terms with Benjamin S. Evans, for and in consideration of the grant of right of way to said railway company across his lands," describing them, "one hundred feet wide, being fifty feet each way from the center of the road-bed, to-wit: to establish a station or depot at or near where the Finch's Ferry road crosses the line of said railway company ; to fence the line through said lands by a fence of two strands of wire, with a top plank ; to locate the quarters of the section hands at or near said station ; to appoint him agent for said railway company at said station or depot, and continue him as such so long as he discharges the duties of such office of agent faithfully and in a competent manner, satisfactory to the auditor and superintendent of said railway company, in accordance with the rules and regulations which may be prescribed for said company ; to pay him, as

[Evans v. Cincinnati, Selma & Mobile Railway Co.]

such agent, a salary of thirty dollars per month, should the business of such station justify the same; and to pay him the sum of two hundred and fifty dollars. And the said Evans hereby agrees to grant such right of way, executed by said Evans and wife to said railway company, as above mentioned. Witness my hand," &c. Signed by A. M. Fowlkes, as general superintendent of said railway company, but not by Evans. The complaint set out this writing, and alleged as breaches, 1st, the failure of the defendant to erect the station houses as stipulated; 2d, the failure to build a fence inclosing the track of the road; and, 3d, the failure to appoint plaintiff as agent at said station, when he was ready and willing to act, and to pay him the stipulated compensation of $30 per month. There were numerous rulings of the court, adverse to the plaintiff, on the pleadings and evidence, and in the refusal of charges asked; and these several rulings, seventeen in all, are now assigned as error. The plaintiff recovered, under the rulings of the court, a verdict and judgment for $286; and exceptions being reserved by the defendant to several adverse rulings, there is a cross-assignment of errors as to these matters. The opinion states the material facts.

JAS. E. WEBB, and THOS. SEAY, for the appellant, Evans.

THOS. R. ROULHAC, and BROOKS & ROY, contra.

STONE, C. J.—These are cross-appeals in the same suit, which was tried on the amended complaint, filed April 10th, 1884. The pleadings, and the rulings thereon, are the same in each of the transcripts. It is not discourteous, we trust, to say of the former, that they are very voluminous. It is our intention to note only such questions raised by them as we deem necessary to a fair presentation of the questions of merit involved. All else we will treat as immaterial.

The cause of action is a writing, executed by the railway company to Evans, bearing date January 21st, 1882. Although executed by the railway company only, it expresses stipulations to be performed by Evans also. It binds Evans to convey to the railway company a right of way, one hundred feet wide, across his lands, and, in consideration thereof, the corporation binds itself to do five things: first, to pay to Evans two hundred and fifty dollars; second, to establish a station or depot at or near where a named road crosses the railway track; third, to fence, in a named way, the line of the track through Evans' lands; fourth, to locate the quarters of the section hands at or near the station; and, fifth, " to appoint him [Evans] agent for said railway company at said depot or station, and continue

him as such so long as he discharges the duties of such office of agent faithfully, and in a competent manner, satisfactory to the auditor and superintendent of said railway company, in accordance with the rules and regulations which may be prescribed for said company, [and] to pay him as such agent a salary of thirty dollars per month, should the business of such station justify the same."

The promise, fifth above, we have stated in the language of the writing, and we have copied all it contains on the subject. Out of this stipulation grew the chief litigation in this cause.

The railroad was completed, and trains commenced running over it about the fifteenth day of September, 1882. At this time, the railway company had constructed its depot building at the point mentioned in the contract, and had paid the two hundred and fifty dollars, stipulated to be paid to Evans. It had not located the quarters for the section hands at or near the specified road-crossing; had not fenced the line of the railway across Evans' land, and had not appointed him nor any one else agent at that place. It is not shown that Evans had applied to be appointed. The station had remained what is known as a "flag station." Soon after the month expired— namely, about October 20th—Evans wrote to the auditor of the road, as follows: "Inclosed, please find my account for services rendered as agent at this place, from September 15th to October 15th. Please send me check for the $30," &c. Accompanying this note was an account against the railway: "To 1 month services as agent from Sept. 15th to Oct. 15th, $30.00." There is no proof in the record that Evans had rendered any services, nor that he had been requested, required, or permitted to render any. To this note the auditor replied, October 23, returning the bill, and saying: "We do not recognize you as our agent in any respect, and I am surprised you should so consider yourself. When we are ready to appoint you, and you are willing, you will be notified of the fact, and will execute bond, and be furnished with blanks and full instructions. Until all this is done, you certainly can not claim to be an agent of, or represent this company in any particular."

From the foregoing correspondence, it is manifest the two contending parties differed in the interpretation of the agreement, and in the relations it established between them. The fifth of the stipulations, copied above, is assailed, as not a binding contract. We will consider that question further on. Conceding, for the present, that it is a binding agreement, we can not agree that, of its own force, it constituted Evans the agent of the defendant railway company. It was, at most, a promise to appoint ; and, on the same hypothesis, we can not agree that the qualifying clause, "should the business of such

[Evans v. Cincinnati, Selma & Mobile Railway Co.]

station justify the same," was made a condition of Evans' right to claim the appointment. The promise to appoint was absolute, and the amount of business to be done at the station was stipulated as the contingency on which his salary, or amount of compensation, was to depend. He was to have thirty dollars per month, should the business at that station justify it. If it did not, then the amount of salary was not agreed on, and that feature of the agreement was left to implication, or to a *quantum meruit*.

It is claimed for the railway company that the fifth of the stipulations *supra* is unilateral, and is not a binding contract; that it is wanting in mutuality, in this, that while it purports to bind the railway company to make the appointment, it does not bind Evans to accept the agency, nor to perform its duties; and the principle is invoked, that unless both parties are bound by an alleged agreement, neither is. It is not controverted, that a promise is a good consideration for a promise; but the contention is, that Evans made no promise to accept or serve. An illustration of this principle is found in 1 Pars. on Contr. 6th ed., 448, in the following language: "If one promises to teach a certain trade, this is a consideration for a promise to remain with the party a certain length of time to learn, and serve him during that time; but, without such promise to teach, the promise to remain and serve, though it be made in expectation of instruction, is void." So, in 1 Add. on Contr. § 18, the doctrine is thus expressed: "All contracts, founded upon mutual promises between persons of full age, must be obligatory upon both parties, so that each may have an action upon it, or neither will be bound." In Wood's Master and Servant, § 81, the doctrine is very forcibly expressed, as follows: "In order to constitute a strictly express contract of hiring, the contract should be definite as to all essential elements, as time, business, and compensation; and in order to be enforced, both parties must be bound thereby; that is, the one must be bound to employ, and the other to serve." These principles are fully sustained by the following adjudged cases: *Lees v. Whitcomb*, 5 Bing. 34; *Chi. & Gr. E. Railway Co. v. Dane*, 43 N. Y. 240; *Br. Bank v. Steele*, 10 Ala. 915; *James v. Stiggins*, 13 Ala. 830; 1 Benj. on Sales, 4th ed. §§ 42, 67.

This whole doctrine, however, rests mainly on the absence of consideration to support the promise; there being no corresponding promise to uphold the promise declared on. Hence, when there is a consideration, the rule does not apply.—*Hartley v. Cummings*, 2 Car. & Kir. 433; s. c., 5 Man., Gr. & S. 247; *Tebbetts v. Haskins*, 16 Me. 283; *Tex. & St. L. R. R. Co. v. Robards*, 60 Tex. 545; s. c., 48 Amer. Rep. 268. And if the party in whose favor such unilateral promise is made,

accept its performance, or do any act in recognition of its implied or intended, though unexpressed consideration, this supplies the element of mutuality, and gives a right of action. *Williamson v. Taylor*, 5 Adolph. & Ellis, Q. B. 175 ; *Elses v. Gatward*, 5 T. R. 144.

We think the principle invoked does not apply to this case. This was not a promise, isolated from all others, and confined to the single matter of the promised agency. The contract contained many stipulations. On the part of Evans, a single one—the promise to convey to the railway company the right of way through his lands. This was the consideration promised and paid by Evans, for the promises or stipulations, five in number, the railway company bound itself to perform. It upholds each of the promises alike; that to appoint Evans agent, equally with that to pay him two hundred and fifty dollars, to establish the depot, and to construct the fence.

We have shown above that the contract, without more, did not appoint Mr. Evans agent. Was it the duty of the railway company to tender the appointment to Evans, or, in order to put the company in default, was it his duty to apply for appointment? We think the latter. It is a reasonable supposition, if not common knowledge, that in the appointment of such agent, more is required and done than simply conferring the authority to act. All such agencies must be performed pursuant to a system, and certain preliminaries must, in the nature of things, be observed and conformed to, before the agent can be considered clothed with authority to act. Again : We have seen that, at that station, the salary or wages of the agent was not definitely fixed by anything expressed in the contract. It was limited to thirty dollars a month, but was not fixed at that sum, unless the business of the station justified it. How are we to construe this clause? It would seem its proper interpretation would require, that, rating his services per cent., or otherwise, according to customary rules in similar service rendered railroad companies, the amount of receipts, or business done at that station, would determine the salary the company bound itself, by its contract, to pay the agent. This, of course, could not be certainly known, and the railway company can not be supposed to have been informed whether or not Evans would accept the agency, on so uncertain a standard of compensation.

On the question last considered, we have felt it our duty to take into the account the correspondence shown to have been had between Evans and the company's auditor. Each seems to have erred in the proper interpretation of the contract. Evans' demand of payment was based on the erroneous assumption, that the contract made him agent, without further ap-

pointment. He demanded what the facts show he was not entitled to. He was in no sense agent; and if he had been appointed, the contract he declares on does not entitle him to thirty dollars a month, in the absence of averment and proof that the business of the station justified so much. So, this demand of Evans was not authorized by the terms of the contract, and it fails to show he demanded, or would have accepted the appointment, under the proper interpretation of the contract given above. Even when the suit was brought, and in fact up to the present time, we are without information that Evans asked for the appointment, or would have undertaken the agency, on the terms on which the contract bound the company to confer it. He has, therefore, failed to put the railway company in default, on this, the fifth stipulation of its contract, as classified by us. The fact that the company's auditor misinterpreted the contract, and claimed that Evans' appointment was optional with the company, can not relieve the latter of the duty of applying for it. We can not now know whether he would accept the agency, on the terms the contract imposes.

The principles above declared are probably decisive of the third specified breach set forth in the amended complaint. That breach is insufficient, in not averring that the business of the station justified the payment of the sum claimed, or some named sum, to Evans, as agent at said station; and in not averring that plaintiff had offered himself, or requested to be appointed agent, &c. This last defect, we suppose, can not be cured; and hence we will not further notice any rulings that may have been made, bearing on that feature of the case.

The complaint alleges a breach of the third and fourth of our classification of the stipulations. The third relates to the fence agreed to be built. A failure to build this was a breach of contract, as was also a failure to locate the section quarters. For these breaches of contract the plaintiff had a right to sue, and can recover at least nominal damages. He can also recover any actual damage he proves he suffered by the failure, with this limitation, that such damages must be the natural and proximate consequence of the breach, susceptible of reasonably certain ascertainment, and not merely possible or speculative losses. The fence was built before the suit was tried; and hence damages, recoverable under this claim, must be limited to the injury suffered by the delay. The possible increase of patronage to plaintiff's store and mill, to result from the location of the quarters for the section hands, was purely speculative, and not a proper basis for recovery.—*Pollock v. Gantt*, 69 Ala. 373. If it be true that plaintiff accepted the fence built after suit brought, in full satisfaction of

[Wood v. Stanley.]

that part of the contract, and of all claim of damages for delay in its construction, then the question of damages in regard to the fence is eliminated from the jury's deliberations. This defense, however, comes in under plea *pais darrein continuance*, and is required to be sworn to.—Code, § 3010.

We do not consider it necessary to discuss any other question.

In the appeal by Evans, we find no errors prejudicial to him, and he will take nothing by his appeal. Let the costs of his appeal, both in the court below and in this court, be paid by him and his sureties.

In the appeal by the Cincinnati, Selma & Mobile Railway Company, the judgment of the Circuit Court is reversed, and the cause remanded.