# Lambie et al. v. Sloss Iron and Steel Co.

*Action to recover Damages for Breach of Mining Contract.*

1. *Mining contract; when a contract of employment and not a lease.*—Where persons enter into an agreement with the owner of a coal mine to work the mine under the supervision of the owner's superintendent, to furnish the men, tools and materials therefor, to reimburse the owner for articles he was to furnish, and to load on an average not less than a certain number of cars per day, and to increase it to a designated number of cars per day, and to "get all the coal out up to the specified amount that may be named" by the owner, for the performance of which work the owner was to pay a stipulated price for each ton of coal loaded on the cars, and the owner was to have the power to reduce or increase the number of miners according to the number of orders he

[Lambie *et al.* v. Sloss Iron & Steel Co.]

might have to fill, such agreement, although stating that it was a lease of the mine. is neither a lease nor an entire undertaking to mine all the coal in said mine; but is only a contract of employment, and its terms neither expressly specifying nor indicating the time during which the employment was to continue, such contract is terminable at the will of either party.

2. *Same; when stopping contractors no breach; sufficiency of complaint.*—Where a contract for the working of a mine is an entire undertaking to mine all the coal in such mine, and after stipulating that the output of the mine was to be entirely within the control of the owner. it was further provided that if the owner had any orders for coal to fill the contractor is entitled to furnish the coal necessary to fill them, the mere fact that the owner stops the contractor from work entirely, is not a breach of such contract. unless at such time the owner had orders for coal to fill; and in an action seeking to recover damages for the breach of such contract on the part of the owner, a complaint which alleges that the defendant stopped the plaintiff from working in said mine and has since refused to allow plaintiff to mine coal therein under said contract, without averring that the defendant had orders to fill at the time he caused plaintiff to cease mining coal, or has had orders since then, assigns no breach of said contract, and is, therefore, demurrable. .

3. *Contract of employment; breach thereof; sufficiency of complaint.*—In an action for the breach of a contract of employment which stipulates that the employer is to furnish to the servant tools and other materials for doing the work, at what such articles cost. a count of the complaint which alleges that the defendant charged the plaintiff a large sum in excess of the cost of the said articles furnished by the defendant to the plaintiff, under said contract, does not assign a breach of said stipulation in the contract; it being necessary, to render the assignment of the breach sufficient, to further aver that the plaintiff had paid such excess, or was in some way damaged by the charge.

4 *Pleading and practice; error in sustaining demurrer to special count; when not without injury, although plaintiff could have had the same benefit under the common counts.*—When a complaint contains the common counts and a special count, the presumption of injury arising from error must prevail and will work a reversal. although the plaintiff could, under the common counts, have given evidence of all matters which would have been available under the special count, unless it affirmatively appears that such evidence was introduced.

APPEAL from the City Court of Birmingham.

[Lambie *et al.* v. Sloss Iron & Steel Co.]

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellants against the appellee, to recover damages for the alleged breach of a contract.

The complaint, as originally filed, contained four counts. In the first count, the terms of the contract are set out *in haec verba*, and are sufficiently stated in the opinion. The 2d, 3d and 4th counts of the complaints were the common counts seeking to recover an amount of money had and received, and for work and labor done.

The demurrers interposed to the first count of the complaint, the principal grounds of which are set forth in the opinion, were sustained. Thereafter the plaintiffs amended their complaint by adding a fifth count, which was as follows: "Plaintiffs claim of defendant thirty-five thousand dollars damages for the breach of a contract entered into between the plaintiffs and defendant on the ——— day of December, 1892, viz., the contract set out in the first count of this complaint and said contract, as therein set out, is here referred to and made a part of this count. Plaintiffs further allege that as a part of this contract, defendant took plaintiffs upon the land and showed them the area of land under which said 'B' mine was, and also discussed with plaintiffs the mining of said coal to the extreme limits of said area, exhibited to plaintiffs a map, then in the possession of defendant, which map defined the limits of said 'B' mine, and showed the area of coal therein. And plaintiffs further aver that both plaintiffs and defendant, at the time said contract was entered into, knew that plaintiffs would have to go to large expense in preparing to carry out said contract on its part, and also in continuing to carry it out; and plaintiffs and defendant knew that if said contract should be revoked by defendant within a short time after plaintiffs had prepared to carry same out and had begun to get out coal under said contract, that said revocation would result in large losses to plaintiffs, and with said knowledge plaintiffs and defendant, pending the execution of said contract, discussed the propriety of limiting the operation of said contract to one year, and as a part of the negotiations which led to the execution of said contract, and pending the execution there-

of and with full knowledge as above set out, defendant insisted that the operation of said contract be limited to one year, and plaintiffs refused to execute said contract with any limit as to time except such time as, under the contract, it would take to mine all the coal shown on said map as being a part of said 'B' mine, and defendant consented thereto; and thereupon and under said circumstances the said contract was executed by plaintiffs and defendant. Plaintiffs say that, although they have complied with all the provisions of said contract on their part, except in such particulars and at such times as compliance was waived or prevented by defendant, defendant has failed to comply with the following provisions thereof." The first assignment of the breach of the contract in this fifth count was substantially the same as the first assignment of breach contained in the first count of the complaint, to which demurrer was sustained. The second assignment of the breach of said contract, as contained in the said fifth count, was as follows: "Defendant further breached said contract in this, viz., defendant did not furnish plaintiffs feed, oil, tram cars, repairs to tram cars, and brattices, at what it cost defendant for getting with ten per cent. added, but defendant charged plaintiffs a large sum, to-wit, five hundred dollars, in excess of the cost of said contract with ten per cent. added, and defendant deducted and retained the amount of said excess out of the moneys due plaintiffs by defendant under said contract and refused or neglected to pay same to plaintiffs."

Demurrers were interposed by the defendant to the 5th count of the complaint, and to the first breach, as assigned therein, upon substantially the same grounds as were the demurrers interposed to the first count of the complaint. The defendant demurred to the second assignment of breach in the fifth count of the complaint upon the following grounds: "1. For that it is not a sufficient assignment of breach. 2. That the said assignment is uncertain, vague and indefinite. 3. That the assignment fails to show on what article or articles defendant charged or retained too much, or what sum it did retain, or on what account it retained any sum, or what was paid and how much ought to have been properly paid to plaintiffs." The demurrers to the fifth

[Lambie *et al.* v. Sloss Iron & Steel Co.]

count and to each of the assignments of breach of said contract as contained therein were sustained, and to this ruling the plaintiff duly excepted.

Thereupon trial was had upon the common counts of the complaint, which resulted in a verdict for the plaintiffs for $20, upon which judgment was rendered. The plaintiffs appeal from this judgment, and assign as error the rulings of the court in sustaining the demurrers as interposed to the original count, and to the fifth count added by amendment.

BOWMAN & HARSH and C. P. BEDDOW, for appellants. The mere fact that the words of a contract do not abstractly and of themselves define the limits of the subject matter of the contract, does not render the contract void for uncertainty. It is sufficient if the contract may be rendered certain by fitting it into the surroundings and circumstances of the parties at the time it was made.—*Kyle v. Bellenger,* 79 Ala. 516; *Boykin v. Bank of Mobile,* 72 Ala. 262; *Mason v. Alabama Iron Co.,* 73 Ala. 270; *Bryant, Admr. v. Stephens,* 58 Ala. 636; *Robinson v. Bullock,* 58 Ala. 618; *Chicago v. Sheldon,* 9 Wallace, 50; *Stone v. Clark,* 1 Metc. (Mass.) 379; Clark on Contracts, 591; *Wyatt v. Larrimer and Weld I. Co.,* 36 Am. St. Rep. 280; *Smith v. Kerr,* 108 N. Y. 31; *Williams v. Glover,* 66 Ala. 193.

2. The following are some cases in which it was contended that the contract was void for uncertainty, but was held otherwise by the court: *Troy Fertilizer Co. v. Logan,* 96 Ala. 619; *Booske v. Gulf Ice Co.,* 24 Fla. 550; *Robinson v. Bullock,* 58 Ala. 618. "The law leans against the destruction of contracts on the ground of uncertainty."—*Boykin v. Bank of Mobile,* 72 Ala. 262.

3. When the terms of a contract are in doubt the acts of the parties, in the execution of it, are the best guides for its interpretation.—*Robbins v. Kimball,* 29 Am. St. Rep. 45.

TILLMAN & CAMPBELL, *contra.*—The contract sued on is not a lease.—*Christensen v. Pacific Co.,* 38 Pac. R. 127; *Hudepohl v. Liberty Hill &c. Co.,* (Cal.), 22 Pac. R. 339; *Smyth v. Tankersly,* 20 Ala. 212; *Lacey v. Newcomb,* 63 N. W. Rep. (Iowa) 707; *Shaw v. Wallace,* 25

N. J. L. 458; *Hammond v. Winchester*, 82 Ala. 477; *Thompson v. Mawhinney*, 17 Ala. 367; 2 Kerr Real Prop., §1163.

2. If a tenancy was created it was a tenancey at will, which was determinable by either party.—2 Kerr on Real Prop., §1385; *Larned v. Hudson*, 60 N. Y. 102; *Crommelin v. Theiss*, 31 Ala. 419.

3. The contract is void for uncertainty.—*Erwin v. Erwin*, 25 Ala. 236; *Gafford v. Proskauer*, 59 Ala. 264; *Nelson v. Kelly*, 91 Ala. 569; *Pulliam v. Schimpf*, 100 Ala. 362; 2 Devlin on Deed, §1010.

4. If not void for uncertainty, the contract was for the employment of appellants for an indefinite time, and, therefore, terminable at the will of either party. *Christensen v. Pacific Borax Co.*, 38 Pac. R. 127; *Williamson v. Taylor*, 5 Q. B. 175; Beach on Contracts, §231; *Howard v. E. T., V. & G. Ry. Co.*, 91 Ala. 268.

5. The fifth count, introduced by amendment, could not refer for essential averments to the first count, to which a demurrer had been sustained.—*Birmingham Ry. &c. Co. v. Allen*, 99 Ala. 359.

BRICKELL, C. J.—This action was instituted by appellants, to recover damages for the alleged breach of a mining contract by which appellants agreed "to lease what is known as B mine, which shall comprise all the coal that will be dumped over B chute and dumped in B bin," and to mine coal therein for appellee. By the terms of the agreement which is set out *in haec verba* in the complaint, appellants were "to give their undivided personal attention to the running of the mine," to mine the coal and load it on the cars for appellee, to keep the tram cars in repair, and to do all the work and furnish all the materials necessary to be done and furnished in the operation of a coal mine, except bank ties, 2x3 tracking, T iron, iron spikes, nails, tram cars, posts and caps, which were to be furnished by appellee, and the latter was to "furnish feed (hay, oats and corn), oil, tram cars, repairs to the tram cars, brattices, either cloth or lumber, at what it costs for getting, adding 10 per cent." All the work was to be done under the supervision and control of the engineer and superintendent of appellee, and the latter was to fix the maximum

wages to be paid to the miners, to keep the time of the men employed in the mine, and to pay them on the regular pay-day out of any funds that might be in its hands belonging to appellants. Appellants "bind themselves to load on an average of not less than 150 tons of coal per day and to increase it to 300 tons," and other clauses of the agreement provide that they are to "get all the coal out up to the specified amount that may be named" by appellee, and appellee "shall have the power to reduce or increase the number of miners from time to time according to the amount of orders that the party of the second part [appellee] has to fill." For the performance of the work stipulated to be done, appellants were to receive seventy-three cents for each ton of coal loaded on the cars for appellee. There were other provisions of the agreement, but they are not material to the questions presented by the appeal. The assignments of breach are, *first,* that "defendant stopped plaintiffs from working in said B mine, and defendant has ever since refused to allow plaintiffs to mine coal in said mine under said contract;" and, *second,* "defendant did not furnish plaintiffs feed, oil, tram cars, repairs to tram cars and brattices at what it cost defendant for getting, with ten per cent. added, but defendant charged plaintiffs a large sum in excess of the cost of said articles furnished by defendant to plaintiffs under said contract, with ten per cent. added." There was a demurrer to the complaint, the principal grounds relied on being that there was no sufficient breach of the contract assigned, and that the contract was void for uncertainty, in that no time was specified therein during which it was to continue, or that it was a mere contract of employment terminable at the will of either party. The demurrer having been sustained, trial was had on the common counts for money had and received, work and labor done, etc., and resulted in a verdict for appellants for $20, and from the judgment rendered, they appeal, assigning as error the ruling of the court sustaining the cause of demurrer.

Although the term "lease" is used in the agreement, it is not seriously contended, and cannot be successfully maintained, that the agreement constitutes a lease. *Christensen v. Pacific Coast Borax Co.,* 38 Pac. Rep.

28

(Ore.) 127; *Hudepohl v. Liberty Hill Con. Min. & Water Co.,* 80 Cal. 553; *Hammond v. Winchester,* 82 Ala. 477. If not a lease, it can be construed only as a contract of employment, and unless its terms expressly specify, or the consequences and incidents appurtenant to the terms and provisions thereof indicate, the time during which the employment was to continue, it was clearly terminable at the will of either party.—*Howard v. East Tenn., Va. & Ga. R. R. Co.,* 91 Ala. 268. No period for its continuance is specified therein, but the construction insisted on by the appellants, is, that they were to be permitted to get out, and appellee was to receive and pay for, *all* the coal in B mine, which is alleged in the complaint to be 160,000 tons, and that the agreement was, therefore, to continue for such time, as might be necessary to work out the mine. This construction is based on the theory that the contract is an entire undertaking for the performance of specific work, namely, the mining of all the coal in B mine and loading it on the cars for appellee. We are of the opinion both the theory and the construction founded on it are repelled by those provisions of the agreement by which the output was to be controlled entirely by appellee, or at least by circumstances not under the control of appellants. The term "B. mine," standing alone, has no definite meaning as to the area of coal-bearing land connected with it, and the words, "which shall comprise all the coal that will be dumped over B. chute or dumped in B. bin," are, we think, descriptive merely, intended to define what is meant by "B. mine," rather than to indicate the quantity of coal appellants bound themselves to get out and appellee was obliged to receive and pay for. That is to say, the operations of appellants were to be confined to such area as could, by the usual and ordinary methods of mining, be advantageously worked by the use of the one shaft or opening, the one chute, and the one bin described in the agreement. But the fact that they were thus restricted to this area does not manifest an intention that the one party should be bound to work out this entire area, or that the other should be required to receive and pay for all the coal therein to be mined and loaded by the former. It is this supposed intention that is rebutted by the provisions

referred to. Although appellants agree to get out not less than 150 tons per day, and to increase the output to 300 tons, this stipulation was not intended to measure the average amount they were to have the absolute right to mine, and appellee was to be required to receive, each day, but only to indicate the condition, as to capacity, in which the mine was to be placed and kept by them. They were simply to be prepared to mine this amount if called upon to do so by appellee. This is made manifest by the subsequent provisions that they were to "get all the coal out up to the specified amount that may be named by the party of the second part," and that appellee should "have the power to reduce or increase the number of miners from time to time according to the amount of orders, that the said party of the second part [appellee] has to fill." Appellants could not be required to get out more than 300 tons per day, but up to this amount the output was entirely subject to the orders given by appellee; that is to say, they were to get out all the coal "that may be named by the party of the second part" "up to the specified amount," 300 tons. The output might, therefore, vary from one ton, or none, per day to 300 tons, and the time required for the performance of their contractual obligations by appellants, under this construction, would vary greatly. It clearly appears from the agreement that appellee owned other mines, operated either by itself or by contractors like appellants, and was engaged in the business of selling or using the coal mined. If it had orders from its customers to fill, or required any coal for its own use, it had the right, so far as anything appears to the contrary in the agreement, to supply the amount required either from the mines operated by itself, or from those operated by its other contractors, if there were others. If the capacity of its mines were insufficient to meet such demand, it had the right to increase it to any extent necessary to enable it to fill all its orders without calling on appellants for a single ton. In other words, there is nothing in the agreement that binds the appellee to give to the appellants any orders, or that gives to appellants an absolute right to mine and load any coal. It is for these reasons we conclude that the agreement leaves the output of the mine entirely within the control of appel-

lee, who, if the contract be an entire undertaking, can indefinitely postpone performance of it by appellants. It expressly reserves the right to reduce the number of miners employed in the mines from time to time according to the orders it has to fill, and hence it had the power to cause all operations in the mine to cease by discharging all the miners, and to be resumed at its pleasure, accordingly as it saw fit to have its orders filled at this particular mine. Such are the consequences and incidents necessarily resulting from and appurtenant to these unambiguous provisions of the agreement, and they rebut the theory that the parties intended the contract to be an entire undertaking to mine out all the coal in the mine, since such theory would require for the performance of the contract by the appellants an indefinite period, depending entirely on the will of appellee, perhaps beyond their life-time, or beyond the time during which they could "give their undivided personal attention to the running of the mine," as required by the agreement. It cannot be presumed, nor inferred from anything in the agreement, that they intended to assume obligations having such consequences. If such construction be adopted, they have obligated themselves to stand always prepared, perhaps for the remainder of their lives, with men and money and their personal supervision, to get out and load on the cars 300 tons of coal each day, although they may not be called upon for years to furnish a single ton, and have rendered themselves liable to respond in damages for any failure to be thus prepared. It is undoubtedly a hardship on them to lose the money and time they have presumably expended on the mine, but it would be a greater hardship to bind them prepetually by a contract having these consequences and incidents arising from the construction contended for. We conclude, therefore, that the contract is not an entire undertaking to mine all the coal in B. mine, and was not intended by the parties to be such, and there being no time specified during which it was to continue, it was terminable at the will of either party, and, therefore, furnishes in itself no criteria by which a breach assigned for its discontinuance can be compensated.

It might be conceded for the purpose of this appeal, that the agreement was an entire undertaking to mine all the coal in the mine, and also, that, if appellee had any orders for coal to fill, appellants were entitled to furnish the coal necessary to fill them, and yet the complaint would not be aided by the concession. The first assignment of breach is, that "defendant stopped plaintiffs from working in said B. mine, and defendants have ever since refused to allow plaintiffs to mine coal in said mine under said contract." Construed most strongly against the plaintiff, this does not show any breach of the contract, even under the construction contended for, since, if the defendant had no orders to fill, it had the right, as we have seen, to stop all work in the mine, and to refuse to allow any coal to be mined. The complaint does not aver that defendant had any orders to fill at the time it caused plaintiffs to cease mining coal, or has had such orders at any time since then. The language used is not equivalent to an averment that defendant had refused to permit plaintiffs to perform their obligations in any respect, or that it has dispossessed them, or taken charge of and operated the mine by itself or through others. The second assignment of breach in the original complaint is also insufficient. It shows that defendant did furnish the articles specified in the agreement, but "charged" for them a sum in excess of the cost price with ten per cent. added. It cannot be inferred from the use of the word "charged," and it is not otherwise averred, that plaintiffs paid such excess, or were in any way damaged by the "charge."

The complaint was not aided by the matters averred in the fifth count, which was added by amendment, as to what was said and done by the parties pending the negotiations between them. These matters rested in parol only, and were not admissible either to help out the construction of the written agreement, or as evidence of what was agreed upon.

It may be, that under the common counts, the plaintiffs could have given evidence of all overcharges of which evidence could have been given under the second assignment (as amended) of breach of the special contract, and that sustaining the demurrer to the breach

worked them no injury. The rule is general, that if a demurrer to a special plea is erroneously sustained, the error is without injury and not a cause of reversal, if it appears that the defendant has had under the general issue the full benefit which could have been derived from the special plea. But that fact must affirmatively appear from the record, and if it does not, the presumption of injury, arising from error clearly shown, must prevail.—*Mitcham v. Moore*, 73 Ala. 542. The same rule must obtain in reference to a complaint containing special and common counts. When a demurrer is erroneously sustained to a special count, the presumption of injury arising from error must prevail, though it be true the plaintiff under the common counts could have given evidence of all matters which would have been available under the special count, unless it appears that such evidence was introduced. The fact of the introduction of such evidence, does not affirmatively appear, nor is it probable that it would have been received if offered. The error of the court in sustaining this demurrer compels a reversal.

Reversed and remanded.