[Pratt Consolidated Coal Company v. Short, et al.]

# Pratt Consolidated Coal Company *v.* Short, *et al.*

## *Assumpsit.*

(Decided November 7, 1914.   Rehearing denied February 11, 1915.
68 South. 63.)

1. *Contracts; Mining Coal; Complaint.*—A complaint alleging that by contract, plaintiffs were to drive and extend all the rooms on the right hand side of an entry in a mine to a point within twenty feet of the entry, and to remove all pillars between such rooms, and to haul the coal taken from the extension of such rooms and from the removal of such pillars, to defendant's tipple, and that they were to mine all coal on the left hand side of an air course parallel with the entry, from the beginning of the air course to the end thereof, and from the air course until they reached the rooms in another mine, and to haul such coal to the tipple, and that in consideration of the same, defendants were to pay plaintiff 65 cents per ton, sufficiently alleged a contractual right of plaintiff to mine all of the coal within a reasonable time in a certain area or territory, and a correlative obligation of defendant to accept and pay for the coal so mined and delivered at the tipple; it follows, therefore, that the contract as alleged was not so indefinite and uncertain as to be invalid.

2. *Trial; Directing Verdict; Grounds; Variance.*—Where a trial was had prior to the adoption of rule 34, Circuit Court Practice, a request by a defendant for the general affirmative charge properly raised the question of variance between plaintiff's pleading and proof.

3. *Contracts; Mining; Jury Question.*—Under the facts in this case it was a question for the jury whether the mine owner had an uncontrollable discretion whether the mine should be worked, or whether it had a right only to suspend mining under the contract in the absence of acceptable and accepted orders for coal.

4. *Same; Termination.*—If the contract gave the mine owner an unrestricted right to close its mine whenever it chose, and thereby indefinitely prolong the process of removing the coal, the contract was for employment only, and was determinable without any breach thereof at the will of either party.

5. *Same; Action; Variance.*—Where the contract alleged gave plaintiff an unqualified right to mine all the coal in a definite territory without any right in the mine owner to suspend or hinder such miner, and the breach alleged was that after entering upon the performance of the agreement the mine owner stopped or prevented plaintiff from continuing performance thereof, evidence showing that the mine owner had a right under the contract to suspend the mining in the absence of orders, presented a material variance, since the defendant's act in preventing the continued performance by plaintiff might have been due to the absence of orders.

[Pratt Consolidated Coal Company v. Short, et al.]

6. *Pleading; Waiver of Errors; Variance.*—Where the trial was had prior to the adoption of rule 34, Circuit Court Practice, and defendant moved for the general affirmative charge, and assigned for error the refusal of such charge, though not on the ground of variance, the assignment did not waive a variance between the pleading and proof, for the failure or omission to insist upon an assignment of error on a good ground or for a good reason, and an insistence thereon on an untenable ground or reason, does not amount to a waiver of the good ground or reason.

7. *Contracts; Mining Coal; Performance; Time.*—Where a contract to mine coal in a certain territory was silent as to the time of performance, the law presumes that it should be performed within a reasonable time.

8. *Same; Mutuality.*—If the agreement originally lacked mutuality in that it contained no stipulation or promise obligating plaintiffs to mine all the coal in such territory, yet if plaintiff did work and expended money thereunder, the element of mutuality was thereby supplied.

9. *Custom and Usage; Varying Terms of Contract.*—The terms of a contract entitling plaintiff to mine all the coal in a certain territory, could not be contradicted by evidence of a custom or usage in that mining district, making contracts for the removal of coal subject to termination at the will of either party.

10. *Contracts; Mining Coal; Evidence.*—Where the action was for a breach of a contract for mining coal, and the defense pleaded was a rule which was reasonable and known to plaintiff prior to the execution of contract forbidding shots to be fired in the mine between certain hours, and that plaintiffs constantly violated such rule over the protest of defendant, evidence that there was such rule in force should have been admitted.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by G. W. Short and another against the Pratt Consolidated Coal Company for breach of contract to mine coal. Judgment for plaintiffs, and defendant appeals. Reversed and remanded.

The following is the complaint:

Plaintiffs claim of defendant $7,000 damages for the breach of a contract entered into with defendant on October 31, 1910, in substance as follows: Plaintiffs were to complete the tram track in entry 6, that is, to extend the track from the point where it was then constructed to the end of entry 6 in defendant's mine 6, near Maxine, Ala., that is plaintiffs were to lay the

cross-ties and place the rails on said track and put the same in condition to be operated from the point where it was then constructed to the end of said entry; to clean out the fallen material or debris in the rooms on the right-hand side of said entry; to drive or extend all of the rooms on the right-hand side of said entry to a depth of 200 feet where they were not of that depth; to remove all the pillars between the rooms on the right-hand side of said entry from the end of said rooms back to a point within 20 feet of said entry, leaving a stump composed of a part of the pillars 20 feet long next to the entry; to load the coal taken from the extension of said rooms and from the removal of said pillars, and place the same on defendant's tram cars, and haul the same on said cars to defendant's tipple. They were to mine all the coal on the left-hand side of defendant's air course in said mine, which said air course ran in a parallel direction with said entry from the beginning of said air course to the end thereof; said air course at the time having been opened for about the same distance of said entry. Said coal was to be mined from said air course to the left until it reached the rooms in the next mine, viz., 5. Plaintiffs were to place the coal mined on said left-hand side of said entry as aforesaid on tram cars of defendant, and carry it in said tram cars and deliver it on defendant's tipple. To accomplish all the work which plaintiffs were to do, they were to furnish their own labor, blasting material, do their own propping, building their own tram tracks, furnish a driver to drive the mules propelling the tram cars. Plaintiffs were also to furnish the labor at their own expense to cut a ditch to drain that part of the mine where they were to work as aforesaid; the work to be done by plaintiffs in a reasonable, proper, and workmanlike manner. The defendant,

in consideration of the doing of said work and delivery of said coal by the plaintiffs, was to furnish the timbers for propping said mine, cross-ties for the tram tracks, and deliver the same on the side of the tram road in said mine, where they were to be delivered to plaintiffs. Defendant was also to furnish tram rails for said tracks, and deliver them on the side of defendant's said tram road for plaintiff's use. Defendant was also to furnish the mules to pull the tram cars from the mine to the tipple, and to take care of, and feed, the said mules. Defendant was to keep plaintiffs supplied with such timbers as were necessary to timber said mine and cross-ties and rails necessary to construct said road as the same were needed by plaintiffs to do their work as aforesaid. Defendant was also to furnish a sufficient number of tram cars to haul said coal, and to furnish them when needed by plaintiffs for that purpose. In consideration for doing the work and other things necessary to be done by plaintiffs, in mining said coal and delivering the same as aforesaid, defendant was to pay plaintiffs 65 cents a ton of 2,000 pounds, payments to be made on Saturday nearest the 20th day of each month succeeding the month on which the coal was delivered by plaintiffs on defendant's said tipple. The work required to be done by plaintiffs as aforesaid to be done within a reasonable time. Plaintiffs aver that they commenced work under said contract on, to wit, November 1, 1910, and continued to work thereunder until, to wit December 7, 1910, when they were prevented by defendant from completing said work. And plaintiffs further aver that they had mined and delivered at the defendant's tipple at the time they were prevented by defendant as aforesaid from carrying out the contract on their part 1,000 tons of coal of 2,000 pounds each, for which they were entitled to compen-

sation at the rate of 65 cents for each ton; that they had expended large sums of money—to wit, the sum of $1,000—in removing fallen material, ditching, and other dead work in said mine at the time they were prevented from carrying out said contract by defendant as aforesaid. And plaintiffs aver that they have been further damaged by defendant on account of its preventing them from carrying out their said contract from earning large profits which they would have earned had they been allowed to carry out their said contract, viz., the sum of $7,000. Plaintiffs further aver that they could have mined said coal and placed it on defendant's tipple as they were required to do under said contract at an expense to them of 47 cents per ton, and that there were 40,000 tons of coal of 2,-000 pounds which plaintiffs could have obtained in doing the work and carrying out the contract as aforesaid, on which they lost a profit of 18 cents per ton. And plaintiffs further aver that they were ready and willing to carry out the provisions of said contract which said contract required them to perform and carry out, and would have carried out and performed the provisions of said contract on their part, but for the fact that defendant refused to permit them to carry out the same; wherefore plaintiffs sue and claim as damages of defendant the sum of $7,000, as aforesaid.

Count. 2. Plaintiffs claim of defendant the further sum of $7,000 damages for the breach of a contract entered into between plaintiffs and defendant on, to wit October 31, 1910, in substance as follows: Plaintiffs, in consideration of the payment to them by defendant of 65 cents per ton for coal mined and delivered at defendant's tipple as hereinafter stated, agreed within a reasonable time to mine all the coal that had not been mined in the rooms on the right-hand side of en-

try 6 in defendant's mine 6 at or near Maxine, Ala., and to mine all of said coal in the pillars on the right-hand side of said entry from the right-hand end of the pillars to within 20 feet of said entry, and to mine all the coal from the rooms on the left-hand side of defendant's air-course in said mine, running parallel with and about the same length as, said entry, and deliver the same at defendant's tipple. Plaintiffs were to furnish their own labor and material to mine and remove the same except defendant was to furnish and feed the mules to haul said coal from the rooms to the tipple, and to furnish the tram cars in which to haul the same, to furnish the timbers to prop the places from which said coal was taken in said mine, and the cross-ties and the rails and other material to construct the tram-roads to be used in the mining of said coal by the plaintiffs. For and in consideration of the delivery of said, coal as aforesaid at defendant's tipple, defendant was to pay plaintiffs 65 cents per ton of 2,000 pounds for said coal, payments to be made on Saturday nearest the 20th day of the month succeeding the month in which the said coal was delivered at said tipple. Defendant was to deliver the timber with which to prop said mine, the cross-ties, and other material to construct said tram roads at or near its tram track in said entry; that plaintiffs, in consideration of the payment above mentioned for said coal and the furnishing of said timber with which to construct said tram roads, and the furnishing of said timber with which to prop said mine, and with the material to construct said tram roads, and the furnishing of said tram cars and the keeping of said mine ventilated, were to mine and deliver all the coal above mentioned at defendant's tippple within a reasonable time. And plaintiff's aver they entered upon the performance of said contract on, to wit, No-

[Pratt Consolidated Coal Company v. Short, et al.]

vember 1, 1910, and did a large amount of work required of them to be done under the contract, and worked thereunder until on, to wit, December 7, 1910, when they were prevented by defendant from further performing the duties required of them under said contract; that defendant refused to allow plaintiffs to carry out and complete said contract on, to wit, the day and date last aforesaid; that plaintiffs had mined and delivered at that time about 1,000 tons of coal, for which they were entitled to compensation as provided in said contract as aforesaid, for which defendant has paid plaintiffs; that they had expended large sums of money, to wit, $500, in preparing to mine and deliver said coal; the work so done by them was reasonably worth the sum of $1,000; that on account of defendant refusing to allow plaintiffs to carry out said contract, and its preventing them from carrying out the contract, they have been damaged in a large sum of money, to wit, $7,000, for which they sue and claim damages as aforesaid.

Plea 2 sets up a rule, which is alleged to be reasonable, and to have been known to plaintiff prior to the execution of the alleged contract, forbidding shots to be fired in the mine between 2 and 4:30 p. m.; also the reason for the rule, and plaintiffs' constant violation of it against the protest of defendants.

BANKHEAD & BANKHEAD, and LAMKIN & WATTS, for appellant.

FRANK S. WHITE & SONS, for appellee.

McCLELLAN, J.—(1) As stated in counts 1 and 2, this is an action for damages for breach of a contract with appellees to mine coal on and in the property of

the appellant, defendant below. The presently mate-
rial parts of those counts will appear in the report of
the appeal. Under proper interpretation, these counts
appear to us to affirmatively aver the contractual right
of the appellees to mine all of the coal, within a reas-
onable time, in a certain area or territory in the mine
of the appellant, and the correlative obligation on the
appellant to accept and pay for the coal so mined and
delivered by the appellees at the designated tipple of
the appellant. With this state of substantial averment
of right and obligation no real objection could be based
on the idea of such uncertainty and indefiniteness, in
respect of right and obligation, as would work the in-
validity of the contract.

The plaintiffs relied upon their own testimony to es-
tablish the contract declared on. The defendant had
a number of mines at and about the place where mine
numbered 6—that here involved—was located. Wil-
liam H. Short, one of the plaintiffs, testified: "I had
nothing to do with supplying the railroad cars in which
the coal was loaded. The railroad company put the
cars up to the tipple for coal to be put in. *Under the
contract* (i. e., that here in question), *I was only to
work when the mines worked.* I suppose the custom
is for the mines in this district when they have no
orders for coal to wait until they get orders. *They do
as they like.* * * * I know what the general cus-
tom is in reference to mining coal and delivering it at
the mine by contractors when the company has no or-
ders for coal. When the mines have no orders for coal,
they shut down and cease work until they get orders.
That same custom exists when they have no railroad
cars to take care of the coal. Ordinarily coal diggers
and contractors in the mines are both controlled by
this custom." ( Italics supplied.)

'It is manifest that the effect of the testimony quoted —with which there was none in conflict, aside from that of the defendant going to a denial of the contract in respect of its binding quality to allow appellees to remove all the coal in the area or territory defined in counts 1 and 2—was to interject into the contract, as alleged in those counts, a most material element in immediate qualification of the unqualified engagement set forth in those counts. Reading the substance of the contractual element stated in the quoted testimony, in connection with the contract asserted in counts 1 and 2, it is obvious that a most material variance between allegation and proof intervened to defeat plaintiff's right to recover on those counts or either of them.— 22 Encyc. Pl. & Pr., pp. 572, 573. The appellant was, hence, erroneously denied the general affirmative charge requested by it.

The judgment is reversed, and the cause is remanded

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

### ON REHEARING.

McCLELLAN, J.—(2) As to the variance treated in the original opinion, ante: According to the practice prevailing when this case was tried—though since September 1, 1913, a different rule has obtained (see 175 Ala. xxi, circuit court rule 34)—the general affirmative charge requested by, and refused to, defendant (appellant) raised the question of variance vel non, which, if occurring with respect to a material matter, and if not waived in the court below or in this court on appeal, must lead to a reversal of the judgment.

(3-5) The contract as declared on imports an unqualified and unqualifiable right in the plaintiffs (appellees) to mine all the coal in a definite territory described therein without any right in the mine owner (defendant appellant) to suspend or hinder in any way or degree the plaintiffs' opportunity to pursue the removal of the coal in the territory without suspension or interruption by the mine owner. Stating it with the utmost favor of fact, inference, and implication to the plaintiffs, the evidence for the plaintiffs, as before quoted, is to the effect that the stated right of the plaintiffs was subject to the mine owner's right to suspend the operation of its mine. Being a jury question as to what the terms of the engagement between the parties were, it was also a jury question—provided the plaintiffs' version was accepted by the jury—whether the owner had left in it under the contract an uncontrollable discretion whether mine 6 should be "worked," or whether, under the engagement plaintiffs state, the right to mine the coal in the described territory depended upon the existence of "orders" for coal that were acceptable to, and were accepted by, the owner. If the terms of the engagement as plaintiffs assert them contemplated the unrestricted right in the owner to close the mine whenever it chose, then we have no doubt that the doctrine of the *Lambie Case,* 118 Ala. 427, 24 South. 108, is applicable; for it was there ruled that a contract whereby the mine owner might, in his discretion, control the daily tonnage the miner might remove, and thereby indefinitely prolong the process of removing the coal, was sufficient to impel the conclusion that the contractual intent was for an employment merely, and that it was determinable, without breach, at the will of either party; else the miner would be obligated to the wholly unreasonable extent of in-

definitely holding himself in readiness to mine whenever the owner desired him to mine, or to regulate the the amount of coal he would or did remove according to the owner's ungoverned desires in the premises. On the other hand, and assuming for the occasion only that the plaintiffs' version was accepted by the jury, if the fact was found by the jury to be that the owner's only right (aside from the absence of cars) was to suspend the mining by plaintiffs because there were no "orders" acceptable to, and then accepted by, the owner, and there were then accepted "orders," and the owner prevented the plaintiffs from mining the coal, the contract was breached; and, touching on this phase of the case, we find applicable value in these expressions from the opinion in *Lambie's Case,* 118 Ala. 437, 24 South. 108: "It might be conceded for the purpose of this appeal that the agreement was an entire undertaking to mine all the coal in the mine, and also that, if appellee had any orders for coal to fill, appellants were entitled to furnish the coal necessary to fill them, and yet the complaint would not be aided by the concession. The first assignment of breach is that 'defendant stopped plaintiffs from working in said B. mine, and defendants have ever since refused to allow plaintiffs to mine coal in said mine under said contract.' Construed most strongly against the plaintiff, this does not show any breach of the contract, even under the construction contended for; since, if the defendant had no orders to fill, it had the right, as we have seen, to stop all work in the mine, and to refuse to allow any coal to be mined. The complaint does not aver that defendant had any orders to fill at the time it caused plaintiffs to cease mining coal, or has had such orders at any time since then. The language used is not equivalent to an averment that defendant had refused to

permit plaintiffs to perform their obligations in any respect, or that it has dispossessed them, or taken charge of and operated the mine by itself or through others."

The breach alleged was that after entering upon the performance of the agreement defendant stopped or prevented the plaintiffs from continuing performance thereof. In the light of these considerations it is manifest that the variance indicated was material, even though it was found as of fact that the absence of accepted orders (aside from the want of cars) was the only condition under which the owner might stop plaintiffs' mining work in mine 6. The breach alleged could not have occurred unless there was an absence of accepted orders. Non constat, defendant's asserted act of preventing the continued performance by the plaintiff might have been on that account, or because of the want of cars. So intimate a condition upon the plaintiff's right to continue to mine in mine 6 could not be an immaterial matter when the breach charged may have been the result of action under the condition to the alleged infracted right under the contract.—4 Ency. Pl. & Pr., pp. 919, 920, and notes.

(6) Under the rules of practice prevailing at the time of this trial and governing its review here, no waiver by appellant in the premises appears. The appellant insisted upon the assignment of error predicated of the trial court's refusal of the affirmative charge; but not upon the ground of variance. The failure or omission to insist upon an assignment of error as upon a good ground or for a good reason and an insistence thereunto on an untenable ground or reason has not been held to operate a waiver of the good ground or reason for a pronouncement of error. The cases cited as being on this point of waiver on the brief for rehearing are

without application. The quotations from them on the brief demonstrate their inapplication. That a different conclusion may obtain in cases tried under the new rules before cited is, of course, apparent.

So the judgment of reversal, on account of the variance, must stand.

The full bench has given exhaustive consideration to the engagement asserted by the evidence for the plaintiffs. In view of the retrial likely to occur, it is thought best to set down the conclusions to follow, additional to and conditioned upon those already stated in this opinion.

(7) There is evidence for the plaintiffs tending to show that plaintiffs became entitled to the right to mine all the coal in a certain territory. The contract being silent as to the time in which it should be performed by the plaintiffs, the law presumes that the parties intended it should be performed by them within a reasonable time.—*Griffin v. Ogletree,* 114 Ala. 343, 21 South. 488; *Bonifay v. Hassell,* 100 Ala. 269, 14 South. 46; *McFadden v. Henderson,* 128 Ala. 221, 29 South. 640; 2 Parsons on Contracts, pp. (bottom) 687, 813.

(8) As drawn from the testimony for the plaintiffs only, the original engagement bore no stipulation or promise obligating the plaintiffs to mine all the coal in the defined territory, and hence was originally affected with a want of mutuality; and, if unaided by the acts to be noted, in further consequence effected to make a nudum pactum, because the promise of the defendant to the plaintiffs to allow them the exclusive right to mine all of the coal in the territory defined was without the supporting consideration of a promise by the plaintiffs to mine all the coal therein, there being in the original engagement asserted by the plaintiffs

no other consideration to support the mentioned promise of the defendant; but there is evidence tending to show work and outlay by the plaintiffs under and in accordance with the engagement they assert. If the party in whose favor a "unilateral promise is made accept its performance, or do any act in recognition of its implied or intended, though unexpressed, consideration, this supplies the element of mutuality, and gives a right of action."—*Evans v. C. S. & M. Ry. Co.*, 78 Ala. 341, 345, 346; *Sheffield Fur. Co. v. Hull Coal Co.*, 101 Ala. 446, 477, 14 South. 672; *McIntyre Lumber Co. v. Jackson Lumber Co.*, 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66.

(9) There was no error in the court's declining to admit testimony tending to show a general custom or usage in that mining district, the effect of which was that contracts of miners with operating companies for the removal of coal were subject to termination at the will of either party. Such matter could not tend to refute the plaintiffs' contention with respect to the terms of the contract relied on. If the contract was as plaintiffs contend, then the only effect this proffered evidence could have was to contradict the terms thereof. Evidence of a custom or usage is not admissible if it contradicts, expressly or by implication, the terms of the contract.—Jones on Ev., § 465.

Our opinion is that the solution of the inquiry whether Renshaw had authority to make the contract asserted by plaintiffs was, under the evidence, a question for the jury.—*United States Co. v. Lesser,* 126 Ala. 568, 28 South. 646; *Commercial Ins. Co. v. Morris,* 105 Ala. 498, 18 South. 34.

(10) Under the allegations of plea 2, it was error for the court to deny defendant the benefit of the proffered testimony to the effect that there was a rule in

force at the time prescribing when "shooting" in the mine should be done.

The application for rehearing is denied. All the Justices concur in the conclusion and in the result.

ANDERSON, C. J., and SOMERVILLE, GARDNER, and THOMAS, JJ., concur in the entire opinion. MAYFIELD and SAYRE, JJ., hold that, under the authority of *Lambie's Case*, 118 Ala. 427, 24 South. 108, the contract testified to by the plaintiffs was one of employment merely, and subject to termination at the will of the parties; and hence was not breached by the acts described in the complaint or the evidence.