# Pullman Co. *v.* Meyer.

### Failure to Furnish Drawing Room Transportation.

(Decided November 25, 1915.   Rehearing denied January 20, 1916.
70 South. 763.)

1. **Principal and Agent; Actions; Burden of Proof.**—If the relationship or authority of the agent is disputed, in an action against the alleged principal, the plaintiff has the burden of proof.

2. **Same; Evidence.**—Where the facts of the disputed relation or the existence of the authority of the agent rests in parol, and there are other facts and circumstances tending to show the relation or the authority conferred, the act and declaration of the asserted agent are admissible.

3. **Contracts; Mutuality; Unilateral.**—If an agreement be unilateral when made, yet if the party in whose favor the promises made accepts its performance or does any act in recognition of its implied consideration, this supplies the element of mutuality, and gives a right of action.

4. **Evidence; Expert; Hypothetical Question.**—While a hypothetical question need not hypothesize every fact in evidence, it is objectionable if it con-

[Pullman Co. v. Meyer.]

tains elements of fact not shown in the evidence; it being sufficient if it incorporate enough of the fact to justify the formulation of an opinion.

**5. Carriers; Passengers; Breach of Contract.**—The evidence examined and held to warrant a finding that defendant's failure to furnish reserved sleeping car accommodations caused a relapse upon the part of plaintiff's neurasthenic wife.

**6. Same.**—Under the evidence in this case it is a question for the jury whether those agents of the railroad company through whom plaintiff contracted for reserved pullman accommodations, were authorized to make the sale.

**7. Contracts; Mutuality.**—Where plaintiff purchased railroad tickets, reserving pullman accommodation from a given point, and purchasing accommodation to that point, his embarkation in reliance on the reservation was sufficient to make the contract mutual.

**8. Evidence; Expert.**—The trial court has a wide discretion with regard to the examination of experts, and may permit the examination of such witnesses out of the regular order.

**9. Same.**—In an action for damages for a failure to furnish pullman accommodations alleged to have resulted in a relapse by plaintiff's wife, an expert witness may testify that the fact hypothesized could produce the physical effects shown.

**10. Carriers; Passengers; Accommodations; Evidence.**—Where the action was for failure to furnish pullman accommodations, and under the evidence, it was a question for the jury whether the person through whom plaintiff made the reservation was authorized, evidence that such persons were notified of facts informing them that a failure would cause special injury, is admissible.

**11. Same.**—In such a case evidence of the happenings and circumstances occurring at the place where the accommodations were to be furnished, is admissible.

**12. Same; Damages.**—Where the wife of plaintiff suffered a relapse of a nervous disease by reason of a failure of defendant to furnish pullman accommodations contracted for, all reasonable expenses incurred by plaintiff in having his wife treated, are recoverable damages.

**13. Same; Mental Anguish.**—Where defendant breached its contract to furnish pullman accommodations, and the circumstances were such that defendant must have known a breach would probably subject plaintiff to distress, damages for mental anguish may be recovered; the action being ex contractu.

**14. Charge of Court; Invading Jury's Province.**—It was improper to give an instruction disposing of a question of fact which was for the jury.

**15. Same; Applicability to Evidence.**—Where the action was for damages for failure to furnish pullman accommodations, a charge referring to the furnishing of accommodations between points other than those for which the reservation was made, was inapplicable to the evidence, and properly refused.

**16. Same; Province of Jury.**—Where the authority of an agent to make reservation was a question for the jury, a charge asserting that defendant was not liable in special damages, for failure to furnish accommodations, unless such agent had communicated circumstances showing special dam-

[Pullman Co. v. Meyer.]

ages, to one concededly authorized at the point of departure to make such reservation, was properly refused as invading the province of the jury.

**17. Carriers; Passengers; Construction by Agent.**—Where plaintiff reserved pullman accommodation and took passage in reliance thereon, and incurred expenses, defendant cannot escape liability because the agent did not understand the legal effect of the resrvation.

**18. Same; Damages.**—An award of $1,000.00 was not excessive where defendant failed to furnish pullman accommodations reserved by plaintiff for his neurasthenic wife who was being taken to a coast resort for convalescence at the time, the failure to furnish this accommodation resulting in the relapse which much retarded the wife's recovery.

APPEAL from Selma City Court.

Heard before Hon. J. W. MABRY.

Action by Albert Meyer against the Pullman Company, for damages for breach of contract to furnish him and wife drawing-room transportation from Anniston to the East. Judgment for plaintiff, and defendant appeals. Transferred from Court of Appeals under section 6, Acts 1911, p. 449. Affirmed.

The facts sufficiently appear from the opinion. The following charges were refused to defendant: (3) You are not authorized to assess any damages for alleged mental suffering or anguish on the part of plaintiff.

(8) If you believe the evidence, you are not authorized to find that defendant, the Pullman Company, through its agents or agent, entered into a contract with plaintiff in Selma, by which defendant agreed to sell plaintiff and plaintiff agreed to purchase from defendant, drawing-room accommodations in the car operated over the Southern Railway between Birmingham and Baltimore.

(12) If you are reasonably satisfied from the evidence that the Southern Railway Company's agent, who sold plaintiff his railroad ticket, and with whom he had the alleged conversations in Selma relative to Pullman accommodations, had no authority from defendant to sell, or contract for the sale of, accommodations between Anniston and Birmingham, and was only authorized to make requests for reservation as a courtesy or convenience to intending railway passengers, your verdict must be for the defendant.

(16) If you are reasonably satisfied from the evidence that the agent with whom plaintiff had his dealings and conversations in Selma relative to the drawing room in the Baltimore car did not understand that he was selling, or contracting to sell, plaintiff

the right to occupy a drawing room between Anniston and Baltimore, but understood that he was merely requesting that the drawing room be reserved to plaintiff between Anniston and Baltimore, your verdict must be for defendant.

(19) I charge you that, unless you are reasonably satisfied from the evidence that the agent with whom plaintiff conferred in Selma was put on notice of the probable consequences to plaintiff's wife should the accommodations between Anniston and Baltimore be not reserved, and, unless you are reasonably satisfied from the facts relative to such probable consequences, or notice thereof was communicated by the Southern Railway agent in Selma to the persons, if any, who had authority to make the reservation in Birmingham, you could not consider the alleged illness of plaintiff's wife, or any expense incident thereto, as the basis for assessing damages in this case.

The following are the questions propounded to Dr. King: "From your knowledge of her condition, at that time, would you, or not, say that, if, upon reaching Anniston where certain accommodations were to be accorded her on a sleeping car, she found they were refused to her, and that that was unexpected to her, and by reason of that she had to make changes at different points, would or would not that result in a relapse to her former condition?" Also: "Was she in such a condition that disappointment in a matter of that importance to her would probably have that effect?" Also: "Could a person in that condition have a relapse from disappointment in getting certain accommodations on a train which she considered necessary to her well-being?" Also: "Would, or not, an unexpected change, or unexpectedly having to take a car that did not go through, instead of a car that did, be more likely to cause a relapse than an expected change?"

Questions propounded to Meyer were relative to the conversations had with the agent of the Southern Railway at Selma about the reservation, and those had with the Pullman Car conductor on reaching Anniston, and are sufficiently indicated in this opinion. The verdict and judgment was for $1,000.

FORNEY JOHNSTON, W. R. C. COCKE, and PETTUS, FULLER & LAPSLEY, for appellant. CRAIG & CRAIG, for appellee.

McCLELLAN, J.—(1) In an action by a third party against an alleged principal the burden of proof—if the fact of the re-

[Pullman Co. v. Meyer.]

lation of principal and agent or the extent of the authority conferred is disputed—is on the affirmer thereof.

(2) Where the fact of such disputed relation or the extent of authority conferred rests in parol, and there are in evidence other facts and circumstances tending to show the relation or the extent of authority conferred, the acts and declarations of the asserted agent are relevant to the issues tendered and are admissible.—*Robinson v. Greene,* 148 Ala. 434, 43 South. 797; *Miller-Brent Lumber Co. v. Stewart,* 166 Ala. 657, 662, 51 South. 943, 21 Ann. Cas. 1149; *B. M. R. R. Co. v. T. C. I. & R. Co.,* 127 Ala. 137, 145, 28 South. 679. Generally the solution of such inquiries must be left to the jury.—*Bank of Montgomery v. Plannett,* 37 Ala. 222, 227; 31 Cyc. pp. 1674-1677.

(3) Even though an agreement is, when made, unilateral, if the party in whose favor the promise is made accepts its performance, or does "any act in recognition of its implied or intended, though unexpressed, consideration, this supplies the element of mutuality, and gives a right of action."—*Evans v. C. S. & M. Ry. Co.,* 78 Ala. 341, 345, 346; *Sheffield Fur. Co. v. Hull Coal Co.,* 101 Ala. 446, 477, 14 South. 672; *McIntyre Lumber Co. v. Jackson Lumber Co.,* 165 Ala. 268, 51 South. 767, 138 Am. St. Rep. 66; *Pratt Con. Coal Co. v. Short,* 191 Ala. 378, 68 South. 63, 67.

"That which creates some benefit to the party promising, or causing some trouble, injury, inconvenience, prejudice, or detriment to the promisee, is a consideration which will uphold a promise."—*Rutledge v. Townsend,* 38 Ala. 706, 716; *Hixon v. Hetherington,* 57 Ala. 165; *Henry v. Murphy,* 54 Ala. 246, 252; *Mott v. Jackson,* 172 Ala. 448, 55 South. 528; 3 Enc. Dig. Ala. Rep. p. 301.

(4) While an hypothetical question, propounded to an expert, is objectionable if it contains elements of fact not shown in the evidence, yet such a question, propounded to an expert witness, is not objectionable because it omits to hypothesize every fact in evidence. An examiner of an expert witness may lay as the basis for the opinion invited only those facts in evidence which seem to him to conform to the theory he would establish. Of course, such questions must also incorporate sufficient of the facts in evidence to fairly justify the formulation of an opinion on a material issue in the case. The frame and substance of

26—195

hypothetical questions to expert witnesses are matters largely committed to the sound discretion of the trial court.—*B. R. & E. v. Butler*, 135 Ala. 338, 395, 33 South. 33; *Morrisette v. Wood*, 123 Ala. 385, 26 South. 307, 82 Am. St. Rep. 127; *Parrish's Case*, 139 Ala. 16, 43, 36 South. 1012; *Long Distance Co. v. Schmidt*, 157 Ala. 391, 47 South. 731; *B. R., L. & P. Co. v. Saxon*, 179 Ala. 136, 59 South. 591; Jones on Ev. §§ 370, 371; 17 Cyc. pp. 244, 250.

(5) The plaintiff's (appellee's) wife was under treatment at a sanitorium in Selma, in this state. Her malady was neurasthenia. She had reached a stage in her restoration where the physician in charge thought it desirable that she be taken to a coast resort, and Atlantic City, N. J., was selected. The physician advised that the journey be made under circumstances of the utmost comfort and seclusion for her; with the view to averting her relapses into the state of nervous debility from which she had been, in a measure, relieved. It was thought to be necessary to her comfort and to be a proper precaution that inclosed apartments in sleeping cars should be secured from Selma, Ala., to Baltimore, Md., the route decided on being the Southern Railway from Selma to Washington, via Anniston, Ala., and Atlanta, Ga.

There was evidence to these effects: That plaintiff applied to the up-town ticket office of the Southern Railway in Selma for a reservation of the drawing room in the through sleeping car operated over this line from Birmingham to Baltimore; that the plaintiff advised an agent in the office of the special circumstances and purposes indicated, which included the need of a drawing room from Selma to Anniston, at which latter point the desired reservation in the through sleeping car was to be taken; that the time and date of departure from Selma—to make the journey with due regard to Mrs. Meyer's condition and without unnecessary delays—was to depend upon the prearranged availability of the accommodations on the through sleeping car to the East, from Anniston; that an agent serving in the office advised the plaintiff that the reservation in the through car could be made in the Birmingham office of the railway company where the space in the through sleeper was handled; that the agent in the Selma office communicated by telephone with the Birmingham office and made a reservation, to be taken at Anniston, of

[Pullman Co. v. Meyer.]

the desired apartment in the through sleeper for a definite date; that plaintiff agreed with the agent in the Selma office to accept and pay for the reservation at Anniston on the date for which the reservation in the through car was made; that the plaintiff bought and paid for the drawing room from Selma to Anniston, and Atlanta, the route contemplated, the agent in the Selma office telling him to pay the Pullman conductor on the through sleeper, at Anniston, for the drawing room so reserved in the through sleeper; that plaintiff traveled, in the drawing room so purchased, from Selma to Anniston; and that when the through car reached that point, at the time anticipated by plaintiff's reservation of the drawing room therein, the space so reserved was in use by persons en route from Birmingham to Atlanta, and plaintiff was denied the use contemplated by the reservation stated. It was shown for the plaintiff that some discussion with the conductor took place in the presence of the wife; and that she was disappointed and nervously disturbed by the failure to get the space contemplated when the journey was begun; though she and plaintiff were given similar accommodations to Atlanta in the next sleeper, and were later, near Atlanta, transferred to the space the reservation originally contemplated. There was evidence tending to show that the wife suffered an at least measurable relapse in consequence of the disappointment, etc., resulting from the failure to get the space contemplated by the reservation and from the circumstances attending this failure and the transfer to and from the two sleepers in that train. The defendant has made an earnest contention in brief against the soundness of the last-stated conclusions from the evidence. The evidence has been carefully considered in the light of that argument. Our opinion is that the trial court was correct in leaving to the jury the decision of the issues of fact made by the phases of the controversy wherein the plaintiff contended that the wife's condition was immediately unfavorably affected by the circumstances mentioned.

(6) The result of the application to the whole evidence of the pertinent legal principles before stated was to require the submission to the jury of the issues of an agency vel non of the actor in the Selma office of the Southern Railway Company and of the extent of the authority conferred on him. It appears without dispute that, though employed by the Southern Rail-

way Company, the person with whom plaintiff communicated with the admittedly authorized representative at Birmingham, in reference to the reservation in question, for the special reasons the plaintiff asserts he assigned for his particular desire to have the drawing room from Anniston east, was authorized to contract for and sell space out of Selma, in defendant's cars. The evidence further shows that the authorized representative of the defendant at Birmingham noted on the space card devoted to the through sleeper in question the plaintiff's reservation of the drawing room desired, but omitted to note that the space would be called for or taken at Anniston en route. It further appears from the evidence that the drawing room in the through sleeper was in charge of the representative of the Southern Railway Company, the common employer of both the persons in the Selma office who sold space in sleeping cars, and in the Birmingham office, where the space in the through sleeper was immediately handled, and that sales of sleeping car space by agents of the Southern Railway Company were accepted as valid by the defendant. It was also open to the jury to find that the personnel of the office at Selma was authorized to communicate to the Birmingham office to make sleeping car reservations on trains leaving that point.

(7) The purchase of railway tickets and of space in the sleeper from Selma to Anniston, in reliance upon the promise of the reservation of space in the through sleeper at Anniston, and the plaintiff's travel, under like reliance, from Selma to Anniston, affected to invest the plaintiff with an enforceable right to have performance of the defendant's promise to furnish the space in the through sleeper at Anniston on the date agreed upon. Hence the defendant cannot claim exoneration from responsibility or accountability because the agreement at one time (we assume) lacked a sufficient mutuality to sustain it. As we understand the pleading, it is not averred at what place the contract was made.

(8, 9) A large number of the assignments of error complain of the process of the method sanctioned by the court in the examination of expert witnesses, Dr. King, who had treated the plaintiff's wife in Selma, was, for convenience, examined out of order. The court properly exercised the sound discretion reposed in it by law in respect to the examination of the expert witnesses. We do not find any basis for the contention that opin-

ions were invited that affected to invade the province of the jury, or that exceeded the proper limit of expert evidence. Dr. King, in his testimony, expressly limited his evidence to general causes and effects, based on his knowledge of the wife's condition at Selma, by the exclusion of any idea that he assumed to know what took place at Anniston, or what, in fact, was the effect upon the wife of the circumstances attending her journey from Selma east. The sum of his testimony in this connection was that certain hypothesized facts and circumstances could or would produce the physical effects upon the wife shown elsewhere in the evidence. Neither the *Travis Case*, 183 Ala. 415, 62 South. 851, nor the *Landers Case*, 135 Ala. 504, 33 South. 482, is authority requiring a different conclusion. In these cases the cause of the plaintiff's illness, or of the cattle's injury, was the subject of the question or the meat of the answer. Here the expert was only invited, and only gave his skilled general opinion upon the possible or probable effect of certain circumstances upon the nervous system of the plaintiff's wife. He did not assume to state what, in fact, was the cause, or what, in fact, did cause the relapse, if that condition resulted.

(10) A number of the assignments of error bring into question those parts of the testimony of the plaintiff whereby he was allowed to recite what was said by him and by one of the persons in the Selma office on the occasions when the plaintiff went there to arrange to take his wife East. If the person or persons with whom he there communicated were representatives of the defendant in such sort as to bind the defendant in the premises, manifestly what took place between the plaintiff and such representatives within the scope of their duties was relevant and admissible. The question of agency vel non, and of the extent of the authority conferred on persons in the Selma office being, under the evidence, for the jury, it was clearly proper to allow the plaintiff to adduce evidence of what took place in the Selma office. Of course, if the jury had determined the issue of agency vel non against the plaintiff, the persons in the Selma office were without power or authority to bind the defendant in the premises; and notice to them, unless communicated to the Birmingham agent, of the condition of the plaintiff's wife would have been ineffectual to impose upon the defendant any obligations with respect to the subsequent illness of the plaintiff's wife. Un-

doubtedly, if the persons in the Selma office were authorized to bind the defendant or to receive notice of special circumstances that would expand the responsibility or accountability of the defendant for a breach of the contract, the special circumstances which the plaintiff asserts he brought to the attention of such authorized representatives of the defendant were sufficient to bring within the range of defendant's responsibility any illness or relapse the wife might have suffered in proximate consequence of a breach of the contract to afford at Anniston the sleeping car space reserved for the use of the plaintiff and his wife.— *W. U. Tel. Co. v. Crumpton*, 138 Ala. 632, 643, 644, 36 South. 517.

(11) Like considerations lead to the conclusion that the court did not err in allowing inquiry into the happenings and circumstances occurring at Anniston and when she was transferred to the drawing room that had been originally reserved; nor was there any error in permitting the plaintiff to testify to the appearance of his wife after she is said to have been unfavorably affected by the failure to secure the drawing room as desired. —6 Ency. Dig. Ala. Rep., p. 438.

(12) If the contract was breached as alleged, and if the breach thereof naturally resulted in a relapse of the plaintiff's wife, all reasonable expenses incurred by him, directed to her professional care and attention, were proper elements of damages to be recovered.—*Ala. City Ry. Co. v. Appleton*, 171 Ala. 324, 328, 54 South. 638, Ann. Cas. 1913A, 1181. Whether her relapse, if so, proximately resulted from the breach of the contract complained of, as well as the character and amount of expenses incurred in her treatment, were questions for the jury's determination, and the court properly so ruled. We do not share in the opinion that the cause of the wife's relapse, if so, was a matter of mere conjecture.

(13) On the plaintiff's theory of the case, the court was well advised in its refusal of charge 3, requested by the defendant. The action was for the breach of a contract, which, by reason of communicated special circumstances, bore notice to the defendant's representative of the probability that if the sleeping car space was not afforded as reserved, the plaintiff, the husband, would probably be subjected to consequences distressing to him.—*Crumpton's Case, supra.* If the action had been ex de-

licto, the case of *Bube v. B. R., L. & P. Co.*, 140 Ala. 276, 37 South. 285, 103 Am. St. Rep. 3, and other cases in its line, would be authoritative.—*W. U. Tel. Co. v. McMorris*, 158 Ala. 563, 48 South. 349, 132 Am. St. Rep. 46. Mental distress may be inferred from relationship and circumstances reasonably justifying such an inference.—*McMorris' Case, supra.*

(14) Charge 8 invaded the province of the jury, and was on that account properly refused.

(15) The court's refusal of charge 12, requested by the defendant, may be justified by reference to the fact that it refers to sleeping car accommodations between Anniston and Birmingham; whereas, the contract alleged did not contemplate accommodations between those cities.

(16) Charge 16, refused to the defendant, possessed misleading tendencies. If there was an agreement between the defendant, acting through an authorized agent, and the plaintiff to reserve the drawing room from Anniston east, and if, as some of the evidence tended to show, the plaintiff incurred expense and travel in going from Selma to Anniston to avail of the defendant's promise to there afford the drawing room desired, the defendant could not escape liability by reason of a misinterpretation by the Selma agent of the legal effect of the agreement made. This charge was susceptible of a construction that would have concluded the plaintiff upon a too contracted hypothesis.

(17) Charge 19 proceeded upon the theory that the agent at Selma was not authorized to bind the defendant by and according to the agreement declared on, and so without regard to the action of the representative at Birmingham. As stated before, we think the question indicated was one for the jury to decide. The charge was well refused.

(18) It is complained that the verdict is excessive. There was evidence tending to sustain the plaintiff's theory of seriously damnifying consequences to the health of his wife as the proximate result of the breach of the contract alleged. If the jury, as undoubtedly it did, accepted the view of the evidence favorable to the plaintiff, there was a large expenditure on the part of the plaintiff in his effort to repair the harmful effect he attributed to the breach of the contract. We are not persuaded that the verdict is excessive.

The many errors argued and pressed in brief have been considered, and no reversible error is made to appear.

The judgment must be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.